## APPEAL OF WM. R. POMEROY ET AL.

[ESTATE OF JOSEPH POMEROY, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF JUNIATA COUNTY.

Argued May 29, 1889—Decided June 28, 1889.
[To be reported.]

1. An award by the Orphans' Court to a creditor of a decedent, of the amount of his claim out of funds adjudged to be in the hands of an executor, is not the equivalent in law of actual payment of the claim.

2. If such creditor, by reason of the executor's insolvency, fails to receive payment of the sum awarded him, he is entitled to come in upon a second fund raised in the same estate for a pro rata share thereof.

3. An order, pending exceptions to an auditor's report, directing payment of an award to a creditor unaffected by them, is a matter within the discretion of the court, and the creditor's omission to apply for such order is not laches.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and MITCHELL, JJ.

No. 74 July Term 1889, Sup. Ct.; court below, number and term not given.

On May 10, 1888, the account of J. Howard Neely, administrator d. b. n., c. t. a. of the estate of Joseph Pomeroy, deceased, was filed, showing a balance for distribution of $4,079.16. The said account was afterward confirmed, and on June 12, 1888, *Mr. R. McMeen* was appointed auditor to distribute the balance shown thereby to the persons entitled.

At the hearing before the auditor, Wm. R. Pomeroy and Jane E. Campbell presented certain claims for allowance, as creditors of the decedent, and in support thereof they offered as proof the report of a former auditor in the same estate and the decree of the court confirming said report. It was then made to appear that Joseph Pomeroy died September 21, 1874, having made a will by which J. Nevin Pomery was appointed his executor. The will was duly admitted to probate; the executor named therein took out letters testamentary and on August 14, 1883, filed a partial account. Exceptions filed thereto resulted finally in a decree of the Supreme Court, entered October 15, 1885, ascertaining the balance in the executor's hands to be something over $58,000. The account was then referred to *Mr. Jeremiah Lyons*, as auditor, to make distribution of this balance.

Before Mr. Lyons, auditor, Wm. R. Pomeroy and Jane E. Campbell, presented their respective claims as creditors of the decedent, and in his report, which was filed February 1, 1886, the auditor allowed the claims and, on account thereof, awarded out of the fund to William R. Pomeroy the sum of $13,836.15, and to Jane E. Campbell the sum of $284.80. The confirmation of the report was delayed by exceptions and applications respecting matters other than these two claims, until February 9, 1888, when the court made a final decree confirming it and directing that payment be made in accordance with the distribution reported. In the meantime, however, the executor became insolvent and had been discharged, when J. Howard Neely was appointed administrator d. b. n., c. t. a.

With respect to the claims presented by Wm. R. Pomeroy, Jane E. Campbell, and others in like circumstance, before Mr. McMeen, as auditor to distribute the balance shown by the account of J. Howard Neely, administrator, etc., Mr. McMeen reported in substance, as follows: That the claims then made by said claimants were allowed by the former report of Mr. Lyons

and liquidated by him at the sums now respectively claimed by them; that J. Nevin Pomeroy, the executor, became insolvent about April 16, 1886, soon after the report of Mr. Lyons was filed, and remained insolvent; that neither of said claims had been paid by the executor, as allowed and awarded, by reason of the insolvency of said executor; that no demand for payment of either of said claims, as allowed and awarded, had been made by the claimants upon said executor. Upon these facts, and the further fact found by the auditor, that the estate of Joseph Pomeroy was then insolvent, the auditor allowed the foregoing claims to participate in the fund and awarded to them a pro rata share thereof with other creditors, as follows: To William R. Pomeroy, $2,578.28, and to Jane E. Campbell, $35.74, and made report accordingly.

To said report, certain creditors and persons interested filed exceptions, alleging that the auditor erred, inter alia, as follows:

1. In not finding as facts, that no exceptions were filed to that part of the auditor's report distributing the balance in the hands of J. Nevin Pomeroy, executor, which awarded and decreed to be paid to Wm. R. Pomeroy, $13,836.15, and to Jane E. Campbell, 284.80, which said auditor's report was filed February 1, 1886; and that during the time from February 1, 1886, to April 16, 1886, J. Nevin Pomeroy was not insolvent, and these claimants lost their money through their own supineness and neglect.[3]

6. In awarding any part of the money now for distribution to Wm. R. Pomeroy and Jane E. Campbell, who were concluded by the former decree of the court.[6]

Said exceptions having been argued, the court, BARNETT, P. J., on March 19, 1889, filed the following opinion and decree:

We think the exceptions to the schedule of distribution reported by the auditor must be sustained. When a sheriff, by virtue of an execution, converts the defendant's property into money and fails to pay creditors in accordance with a decree of distribution, the defendant is discharged from liability for the fund in the sheriff's hands, and the creditors' remedy is against the sheriff. This is a proceeding, it is true, in a common law court. But equity follows the law. When letters testamentary are granted to an executor, and assets come to

his hands, his accounts are subject to the jurisdiction of the Orphans' Court, and distribution is made in accordance with its decrees. The executor is, to that extent, a quasi officer of that court, whose duty it is, like a sheriff, to satisfy the claims of the distributees. If he fails to do so, they at least have a remedy against him. If he has been discharged, and further assets of the estate come to the hands of an administrator de bonis non, it would not be equity to take these latter funds from creditors who were not included in the former distribution, and appropriate them to former distributees to whom payment had been decreed in full. That would be to take the funds of an estate to make good the default of the executor, at the expense of the latter class of creditors, and leave them without remedy against the executor. It would be to give two chances to the first class of creditors to recover payment, and deny the whole of one to the latter.

As between these two classes of creditors, we think the former decree of distribution was conclusive; Kittera's Est., 17 Pa. 416; Sergeant v. Ewing, 30 Pa. 75. In a bankruptcy proceeding, where a dividend was declared and advertised to be paid, and, subsequently to the appointed day for payment, the bankers to the commission in whose hands a sum more than sufficient for the payment of the dividend had been left by the assignees, stopped payment and afterwards became bankrupt, it was held that an order of dividend is to be considered as a separation from the bulk of the estate of the sum to be divided, and that the unpaid dividends were lying in the hands of the bankers at the risk of the creditors who had neglected to apply for payment: 1 Mont. & MacA. 283, cited in Hilliard on Bankruptcy, 216, § 37. We are of opinion that the amount found due by the executor on the confirmation of his account was a separation of that sum from the bulk of the testator's estate, and when the distribution made by the auditor of the sum so separated was confirmed by the court, the several sums so found due and appropriated to the distributees, remained in the executor's hands at their risk. We therefore refer the matter back to the auditor, to distribute the fund in the hands of the administrator de bonis non, among those entitled, who did not have an appropriation made to them in full of their respective claims by the former auditor.[1]

The auditor thereupon made a supplemental report by which a part of the fund for distribution was awarded to creditors other than the claimants and the remainder to the residuary legatees of the testator, to which report the claimants filed exceptions, alleging that the auditor erred:

1. In excluding Wm. R. Pomeroy and Jane E. Campbell, who were shown to be creditors by a former report of auditor Lyons and the decree of the Orphans' Court from the fund.[8]

2. In deciding, that, notwithstanding that J. Nevin Pomeroy, the executor, was insolvent at the time of the filing of said auditor Lyons' report, and continues so to this time, and was insolvent when his report was confirmed and the money decreed by the Orphans' Court, the said decree was payment in law, and debarred them from participating in the fund now under distribution.[9]

The court on May 2, 1889, dismissed these exceptions and confirmed the supplemental report of the auditor.[11]

William R. Pomeroy and Jane E. Campbell thereupon took this appeal, specifying that the court erred:

1. In the decree setting aside the first report of the auditor.[1]

3, 6. In sustaining the exceptions to said report.[3] [6]

8, 9. In dismissing the exceptions to the supplemental report.[8] [9]

11. In confirming the supplemental report.[11]

*Mr. B. F. Junkin* and *Mr. A. J. Patterson* (with them *Mr. J. Howard Neely*), for the appellants:

1. The ruling of the court below that a decree awarding payment to a creditor out of money in the hands of an executor, operates ipso facto as payment, although nothing is realized from the decree by reason of the executor's having squandered the assets in his hands and become insolvent prior to the adjudication, is unreasonable, and in effect is making the creditor a surety for the executor. There is no analogy between an executor, who receives assets of the decedent without the agency of the creditors, and a sheriff. Ex parte Powell, 1 Mont. & MacA. 283, was ruled, not on the effect of the decree per se, but on the subsequent neglect of the creditor. The circumstances were analogous to a failure to present a check with due diligence, and there is no similitude between that case and this.

2. The claimants are not chargeable with laches. What more could they have done than they did? It is possible, that as no exceptions were filed to the allowance of their claims by the first auditor, they might have asked for a special decree directing payment of their claims. This practice is unknown in the counties of Juniata and Perry, and to hold appellants guilty of negligence because they did not resort to it, would be a harsh and unjust ruling. Even had they done so, their earliest opportunity was on April 1, 1886, when the auditor's report was filed, and under the facts proved it is clear that the executor was insolvent for several years prior to 1886. The decree reverses the old maxim that the law helps the vigilant, by making claimants lose their claims because of having proved their debts before the appellees proved theirs.

*Mr. Jeremiah Lyons*, for appellees:

1. What caused the executor's insolvency? William R. Pomeroy, one of the claimants, on April 14, 1886, entered judgment against him for $50,000, issued execution, levied on and sold all his property, and bought in all the realty and nearly all the personalty. The greater part of the property was property which the executor got by the decedent's will. Thus the estate of the testator was taken to pay the private debt of the executor to William R. Pomeroy, and he now seeks to take from the residuary legatees what was left to them, to pay his claim against the estate.

2. There is no evidence that the executor was insolvent at the time the report of the first auditor was filed, or that if they had demanded their money at any time prior to the middle of April, 1886, when according to the auditor's finding, he became insolvent, they would not have been paid. The presumption is that the executor had the money. The exceptions to the report of the first auditor in no way affected the claimants' demands, and they have no excuse for not demanding their money. A creditor neglecting to come in with his claim to a pro rata share of the assets until after an auditor's report is confirmed, is too late: Stœver's App., 3 W. & S. 154. On the same principle, the claimants having taken no measures to recover their money, should suffer the loss; otherwise the residuary legatees, who are without fault, will suffer hardship.

OPINION, MR. CHIEF JUSTICE PAXSON:

This record presents the question whether creditors of an estate whose claims have been awarded them by an auditor, and confirmed by the Orphans' Court, out of the funds of an estate in the hands of the executor, but who have not received payment owing to the insolvency of said executor, are entitled to come in upon a second fund raised in the same estate, and claim a pro rata share thereof. In other words, is the award of an auditor in favor of a creditor, and a decree in his favor, actual payment? The auditor held that it was not, but he was reversed by the learned judge below, who held that the award amounted to payment so far as to exclude the creditor in whose favor it was made from participating in the second fund.

It would have been more satisfactory if some authority had been cited to sustain so novel a proposition. Kittera's Estate, 17 Pa. 416, and Sergeant v. Ewing, 30 Pa. 75, are not in point. No such question as the one before us was raised in either of those cases. Ex parte Powell, 1 Mont. & MacA. 283, is equally wide of the mark. That was a case arising under the English bankrupt law. The creditors were allowed to select the bank where the money was to be deposited when received by the assignee; a dividend was declared and the creditors notified to call at the bank, get their checks, and draw their money; some of the creditors neglected to do so, and in the meantime the bank failed. The distinction between that case and this can be seen at a glance. The auditor finds the fact that the executor became insolvent before the final confirmation of first auditor's report, and pending exceptions filed thereto by other parties. It is true, the appellants might have applied to the court for an order upon the executor to pay them pending the exceptions. Such order, however, would have been in the discretion of the Orphans' Court, and it is not a practice prevalent in all the counties of the state. I do not see how these appellants can be punished by the loss of their claims for this omission. The court below, however, evidently regarded the case as analogous to that of a sheriff, who has collected money on an execution, and fails or neglects to pay it over. It is true in such case the debt is discharged and the execution creditor must look to the sheriff for the money. But I am unable to see the analogy. The sheriff is the officer of the law, and has

given security for the faithful performance of his duty. Moreover, the execution creditor having placed his execution in the hands of that officer for collection, has in a manner constituted him his agent for that purpose, and has the right to sue upon his official bond in case of default. But an executor is not an officer of the law, nor in any sense the agent of the creditor. He is appointed by the testator, and derives his authority to act from the will. The granting of letters testamentary by the register of wills is a pro forma act, to give effect to the will of the testator.

If there was any laches here, it appears to have been participated in by all parties connected with the estate, creditors, legatees, and distributees alike. Nor do I see upon what grounds other creditors, who did not present their claims until the second audit, can charge those creditors with laches who presented their claims before the first. The residuary legatees also could have pressed this estate to an earlier settlement as well as the appellants could. Any person interested in an estate can cite the executor to file his account. That the great loss to this estate is due in a great measure to the supine negligence of nearly every one interested in it, I have very little doubt, but I do not see that the appellants are entitled to a larger share of the blame, if there be any, than the others. We see no ground upon which the principle that an award is payment can be sustained. I know of no decided case which so holds, and none such has been cited in either the printed or oral argument.

> The decree is reversed at the costs of the appellees, and it is ordered that distribution be made in accordance with this opinion.