# Miller's Estate.

*Wills—Executors and administrators—Probate of will.*

An executor is appointed by the testator, and derives his authority to act from the will. The granting of letters testamentary by the register of wills is a pro forma act, to give effect to the will of the testator.

The admission of a will to probate is a judicial determination of the validity of the will, and unappealed from is conclusive as to the appointment of the executor.

The appointment of the testator gives to the executor a right to administer of which only his own renunciation can deprive him, or his refusal to appear when cited to prove the will and take out letters. The time when it becomes imperative for an executor named to accept or renounce, is when he is cited to do so. Until the executor named in the will has refused or renounced the trust, the register has no authority to grant letters with the will annexed.

The register of wills admitted a will to probate. Before letters testamentary were issued to the executor named in the will, two of the legatees appeared before the register and applied for letters of administration with the will annexed. Before these letters had been issued, the executor appeared and requested that letters testamentary should be granted to him. Instead of complying with his request the register proceeded to take testimony, and determine the executor's sanity, which resulted in his refusing letters to the executor, and in granting letters of administration to one of the legatees. *Held*, that the action of the register was without authority of law, and that the orphans' court committed no error in reversing the action of the register, especially when it found from the evidence that the executor was mentally competent at the time letters were refused to him.

Argued Oct. 11, 1906. Appeal, No. 148, Oct. T., 1906, by Martha A. Shirley, from decree of O. C. Armstrong Co., revoking letters of administration, etc., in estate of Robert Miller, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeal from register of wills.

PATTON, P. J., filed the following opinion:

By the statement of the somewhat complicated facts, in their

chronological order, and the law, as we understand it, governing the same, we may be able to arrive at a fair and just conclusion.

Robert Miller made his last will and testament on September 21, 1894, and appointed therein John W. Miller his executor.

About January 1, 1904, said John W. Miller began to show signs of mental derangement, which increased in violence until April 14, 1904, when upon the petition of his wife and son, under Act of April 20, 1869, P. L. 78, a commission was appointed, which reported on April 15, 1904, " That the said John W. Miller is insane, and that the welfare of himself and others require his restraint and that his is a suitable case for confinement." On the same day the report was confirmed by the court and it was directed that John W. Miller be confined in the hospital for the insane at Warren, Pennsylvania.

What effect had the finding of the commission and the decree of the court upon the civil rights of John W. Miller? In our opinion, none, except to confine him. The act of 1869 has been construed in Brickway's Case, 80 Pa. 65, and in Halderman's Appeal, 104 Pa. 251. The gist of these opinions is that the purpose of the act is expressed in its title, viz: " An act to provide for the admission of certain classes of the insane into hospitals for the insane." It conferred no jurisdiction over the estate of the lunatic : Halderman's Appeal, 104 Pa. 251.

Robert Miller died on July 7, 1904. On July 28, 1904, his will was offered for probate before the register of wills and he made the following order : " Now, July 28, 1904, the testimony of the above named witnesses being sufficient, I do hereby admit the foregoing will to probate and order the same to be recorded as such. Given under my hand the above date. H. B. Henderson, Reg. Registered and recorded July 28, 1904, will book, vol. 7, page 37. H. B. Henderson, Register."

When the register by the foregoing decrees admitted the will to probate, it was a judicial decision by him that it was genuine ; that it was regular in form and execution ; that the testator was competent to make it ; that he appointed John W. Miller his executor, and that said document should be duly entered upon the records. The admission of the will to probate was in effect appointing John W. Miller executor of the instrument thus probated. " The proof of the authority of the executor to

act as such is a production of a copy of the will by which he was appointed, certified under the seal of the ordinary. This is usually called the probate:" Bouvier's Law Dict., Title, Probate of Wills. "If the execution of the will be properly proven the register is bound to issue letters testamentary to the executor named therein, unless disqualified by minority, he is the appointee of the testator, not of the register, and he has no discretion in the matter:" Will of Wm. Neal, 17 W. N. C. 191. "With the probate of the will the register's judicial powers cease:" Mathews v. Biddell, 8 Pa. Superior Ct. 112. "The register of wills performs the full measure of his duties when he requires the production of the will for probate:" Estate of Sarah Nichols, 3 Pa. Superior Ct. 484. "The executor is appointed by the testator, and derives his authority to act from the will. The granting of letters testamentary by the register of wills is a pro forma act to give effect to the will of the testator:" Pomeroy's Estate, 24 W. N. C. 296. "The appointment of the testator gives to the executor a right to administer of which only his own renunciation can deprive him, or his refusal to appear when cited to prove the will and take out letters:" Bowman's Appeal, 62 Pa. 166.

What should have been the next step taken if John W. Miller did not apply for letters, a citation should have been issued requiring him to take out letters in a reasonable time or show cause why administration should not be granted to the party legally entitled thereto, and this citation should not be granted to the party legally entitled thereto, and this citation should have been served upon the next of kin of the testator: Langton's Estate, 14 W. N. C. 46. The register can grant letters of administration with the will annexed only "wherein the executors shall all refuse and renounce:" Act of March 15, 1832, P. L. 135, sec. 18, Stewart's Purdon, page 1074, P. L. 19.

So far as the record shows, John W. Miller did not refuse or renounce his right to act as executor, or was any citation served upon him.

On August 5, 1904, a number of the legatees with their attorneys appeared before the register and applied for the right to administer upon the estate. So far as the record shows John W. Miller had no notice of the meeting, was not present or represented by counsel. The records of the lunacy case No. 9,

June Session, 1904, were offered in evidence to show that he
was not qualified to act as executor. It seemed to be taken
for granted that this disposed of the rights of John W. Miller,
and a fight ensued among the next of kin of Robert Miller to
determine who would administer upon his estate. It resulted
that August 16, 1904, Isabella Ralston and Martha A. Shirley
were appointed administratrices by the register.

On September 3, 1904, Elizabeth Moorhead appeared before
the register and set forth that the estate of Robert Miller was
suffering because Martha A. Shirley and Isabella Ralston, the
administratrices appointed by the register, had neglected to act,
and procured a citation requiring them to enter upon the dis-
charge of their duties or show cause why their appointment
should not be recalled.

On September 9, 1904, Isabella Ralston filed her answer re-
fusing to act jointly with Mrs. Shirley.

On September 9, 1904, Mrs. Shirley answered the citation
and agreed either to act individually or jointly with Mrs. Ral-
ston, objected to further delay and asked that the letters to
Mrs. Ralston be revoked.

On September 13, 1904, Della Miller, a daughter of John
W. Miller, wrote to Dr. Guth, the superintendent at Warren,
saying that it was necessary for her father to come home to
attend a law suit.

On September 14, 1904, Dr. Guth wrote her that in his
opinion that her father was sufficiently restored to be granted
leave of absence, and if she would get the permission of the
judge and county commissioners, he would let him go on a
parole of thirty days.

On September 24, 1904, a petition was presented for the dis-
charge of Miller upon which the court made the following order:
"September 24, 1904, upon presentation of the within petition
and the court being of the opinion that John W. Miller now
confined at the hospital for the insane at Warren, Pa., has re-
covered his reason sufficiently that he may be discharged from
custody and confinement. This is to order and direct the au-
thorities at said hospital to discharge him, the said John Miller,
from the custody of said institution upon presentation of a
copy of this order. By the court." Shortly after this order
was made, and on the same day, it came to the knowledge of

the attorneys of Martha Shirley that said order had been made. They objected to it, and the court made a further order that the discharge of John W. Miller should in no manner affect the proceedings then pending before the register. This order has been lost and cannot be found.

The discharge of Miller. from the insane asylum was authorized by sec. 7, Act of April 20, 1869, P. L. 78 (Stewart's Purd. page 2360, P. L. 11), which provides " on statement in writing to any law judge . . . . that his mental disorder has so far changed its character as to render further confinement unnecessary, the judge shall make suitable inquisition into the merits of the case, and according to its results, may or may not order the discharge of the person."

It is argued that this act only applies to the discharge of the criminal insane committed under sec. 5 of the act. We do not think so. No other method is provided to empower the court to discharge those committed under sec. 6. We have directed the discharge of countless persons from custody who were committed under sec. 6. This is the first time that our authority has been denied.

Be this, however, as it may, as we stated before in our opinion, neither the commitment of John W. Miller nor his discharge affected his civil rights. Its only purpose was to confine him temporarily for his own personal welfare: Halderman's Appeal, 104 Pa. 251.

On September 29, 1904, John W. Miller appeared before the register and requested that letters testamentary be issued to him. To this Martha A. Shirley and other legatees objected and renewed their application that letters of administration c. t. a. be issued to Martha A. Shirley.

On October 14, 1904, attorneys for Mr. Miller and Mrs. Shirley appeared before the register and testimony was taken. On November 1, 1904, more evidence was offered and the case continued.

On November 9, 1904, John W. Miller presented his petition to the court of common pleas asking for a writ of mandamus to compel the register to issue letters to him. After hearing the mandamus was granted.

On May 24, 1905, the decree of the court was reversed by the Supreme Court for the reason that the mandamus was

prematurely issued: Miller v. Henderson, 212 Pa. 263, that court saying, " The register may issue letters testamentary to the appellee when free to act, after the disposition of this appeal. If he should refuse them and improperly award letters to another, the orphans' court, on appeal, can correct any wrong that may be done."

On June 28, 1905, Mrs. Shirley and Mr. Miller again appeared before the register and further testimony was taken.

On June 29, 1905, the register appointed Martha A. Shirley administratrix c. t. a. of Robert Miller, deceased, and refused letters testamentary to John W. Miller.

On June 30, 1905, John W. Miller appealed from the decision of the register, and that appeal we now have before us.

The first reason assigned in the appeal is that the register had no jurisdiction to appoint an administrator c. t. a. when the executor mentioned in the will appeared and asked for letters. We think this position is well taken, as has been shown by the authorities, heretofore cited, in this opinion, when the register admitted the will to probate and registered it in his office. Nothing further remained to be done, except to give Miller a certificate of his appointment, so that he could show his authority to act as executor to any person who might question it.

In Sill v. McKnight, 7 W. & S. 244, the Supreme Court held that a person found by inquisition to be an habitual drunkard, is not thereby deprived of his power to perform the office of executor. And in that opinion Mr. Chief Justice GIBSON points out how and why the orphans' court should be applied to in case relief is needed by reason of the executor being insane.

The Act of March 29, 1832, section 26, P. L. 190, provides that when an executor has been duly declared a lunatic, the orphans' court shall have power to vacate the letters. The Act of May 1, 1861, section 2, P. L. 680, provides that when the sole executor becomes incompetent to discharge the duties of the trust by reason of sickness or other visitation, the court having jurisdiction shall have power to vacate the letters testamentary and grant new letters.

We have not been able to find any case in the books, or has any been cited to us, where the register has assumed jurisdic-

tion to pass upon the question of the insanity of the executor. In our opinion if such a contingency arises relief should be sought in the orphans' court.

The second reason assigned for appeal is that the register should have dismissed the objections of Mrs. Shirley, because she did not give bond as required by the Act of June 6, 1887, P. L. 359.

It would seem from the record that Mrs. Shirley first objected to the register granting letters to Miller on September 29, 1904. No bond being given in ten days these exceptions would fall, and the law would not authorize the register to consider them. However, Mrs. Shirley again filed exceptions on October 14, 1904, and gave the bond required by the act of assembly on October 22, 1904. This was irregular. When it appeared to the register on October 14 that no bond had been filed he should have dismissed the exceptions. But having allowed new exceptions to be filed on October 14, we are inclined to let them stand so that this case may be determined on the merits.

The third reason for the appeal, viz: that the register is without authority to pass upon the qualifications of the appellant to act as executor after the will has been admitted to probate, has heretofore, in this opinion, been decided in favor of the appellant.

The fourth reason assigned in the appeal that Martha A. Shirley has not shown that the executor is not competent to administer upon the estate, requires us to examine the testimony. The register filed no opinion, hence we do not know how he arrived at the conclusion that John W. Miller was insane.

On the hearing before us Dr. Guth also testified as to the insanity of Miller, and he had little if any knowledge of his condition after he left the hospital on September 26, 1904. Speaking as to his condition on that date he says : " In my opinion he was not capable of taking care of any business that would require mental exertion, he was not well enough to do any complicated business ; I don't think he was restored fully. I would not regard him as capable of settling an estate. It was confusion of the mental faculties. There were no delusions present, no hallucinations present, there was nervous restlessness, and irritability which resulted in this confusion. He im-

proved up to the time he left the hospital. When he left the hospital he talked all right and in a rational manner."

The appellee also called Dr. J. H. King as a witness, who testified that he was the family physician for John W. Miller, and had known him from eight to ten years. He says that Miller was insane from worry when he was sent to the asylum, and that he returned in his normal condition and that there was nothing in his actions or conversation that was weakened by the previous insanity, and that his mind was competent to settle up an estate.

The testimony of Dr. C. J. Jessop was offered in evidence, who says, in speaking of the condition of John W. Miller shortly after he returned from the hospital, " He is rather fidgity. I don't think he is fairly sane."

On part of the appellant Dr. T. N. McKee is called, who testifies that shortly after Miller came home from the hospital he visited him and made an examination, and that he was of sound and normal mind. A large number of Mr. Miller's neighbors were called by the appellant, who met him frequently and had many business dealings with him after he returned from the asylum. They united in saying that his mind was normal and that he was entirely competent to attend to his own and other people's business. He was elected a school director in the township in the spring of 1905; he served as an inspector on the election board ; he attended to the affairs of the church; he is the owner of a farm containing 100 acres and worth $8,000, upon which he successfully farmed.

The testimony of the appellant's witnesses convinces us that John W. Miller has fully recovered his mental faculties, and was competent to act as the executor of Robert Miller when refused the appointment by the register.

We conclude from the whole testimony that when Miller applied for letters on September 29, 1904, he was competent to act as executor. The law does not require the testator to appoint the most intelligent or the best qualified man as his executor. At the very most the register would not be justified in refusing letters to the person named as executor unless it appeared that his appointment would be detrimental to the estate.

John Miller is a man of means ; he has given a bond in the

sum of $60,000 ; for upwards of twenty months since his re-
turn he has conducted his own and public business with care
and success.   We believe he can settle the estate of Robert
Miller with credit to himself and with safety to the estate.

And now, June 27, 1906, the decree of the register granting
letters of administration c. t. a. to Martha A. Shirley is revoked,
and it is now ordered that letters testamentary be issued by the
register to John W. Miller upon the estate of Robert Miller, late
of Freeport borough, deceased.

*Error assigned* was the decree of the court.

*W. P. Rainbow*, with him *W. J. Christy* and *John B. Chap-
man*, for appellant, cited : Langton's Estate, 14 W. N. C. 46 ;
Shoenberger v. Lancaster Savings Institution, 28 Pa. 459 ;
Shepard's Estate, 170 Pa. 323 ; McGregor v. McGregor, 3
Abb. (N. Y.) 92 ; Wilkey's App., 108 Pa. 567 ; Brubaker's
App., 98 Pa. 21 ; Levan's App., 112 Pa. 294.

*R. L. Ralston*, with him *Calvin Rayburn*, for appellee, cited :
Miller v. Meetch, 8 Pa. 417 ; Halderman's App., 104 Pa. 251 ;
Neal's Will, 17 Phila. 527 ; Bowman's App., 62 Pa. 166 ;  Pom-
eroy's App., 24 W. N. C. 296 ; Harberger's App., 98 Pa. 29 ;
Sill v. McKnight, 7 W. & S. 244 ; King's Estate, 9 W. N. C.
207 ; Wagner's App., 43 Pa. 102.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1907 :

The learned judge of the orphans' court has stated at length
the facts of this case in his opinion and they need not be re-
peated here.   Nor is it necessary to discuss or determine the
numerous questions suggested by the appellant's argument in
order to sustain the decree of the orphans' court.

The will of Robert Miller was presented to the register of
Armstrong county for probate on July 28, 1904, and thereupon
he made the following decree: " I do hereby admit the fore-
going will to probate and order the same to be recorded as
such."   This was a judicial determination of the validity of
the will and, unappealed from, was conclusive as to the ap-
pointment of John W. Miller as executor : 1 Wms. Exrs. 549 ;
3 Redf. on Wills, * 48.   An executor is appointed by the
testator, and derives his authority to act from the will.   The
granting of letters testamentary by the register of wills is a

pro forma act, to give effect to the will of the testator : Pomeroy's Appeal, 127 Pa. 492.   The appointment of the testator gives to the executor a right to administer of which only his own renunciation can deprive him, or his refusal to appear when cited to prove the will and take out letters : Bowman's Appeal, 62 Pa. 166.   The time when it becomes imperative for an executor named to accept or renounce, is when he is cited to do so: Ralston's Estate, 158 Pa. 645.   Until the executor named in the will has refused or renounced the trust, the register has no authority to grant letters with the will annexed : Act of March 15, 1832, sec. 18, P. L. 135 ; Stewart's Purd. 1074, P. L. 19.

When, therefore, on August 5, 1904, the legatees appeared before the register and applied for letters of administration with the will annexed, the latter was confronted with his own record made within a fortnight previously, disclosing the facts that the testator had appointed John W. Miller his executor and that he had neither refused nor renounced the trust and had not been cited to do either.   The plain duty imposed upon the register by the statute under these circumstances required him before issuing letters of administration with the will annexed to another person to cite Miller, the executor named in the will, to appear and accept or refuse letters testamentary. The register, however, ignored this provision of the statute and appointed two of the legatees to administer the estate.   Before letters of administration had been issued to them, or they had taken the official oath or filed a bond, John W. Miller appeared before the register and requested that letters testamentary be granted to him.   Instead of complying with his request, the register proceeded to take testimony and determine Miller's sanity, which resulted in his refusing letters to Miller and in granting letters of administration to one of the legatees. There is no statutory authority for such a proceeding under the facts of this case and we have not been referred to any decision or text-book authority that recognizes any such power or authority in the register.   His duties as well as his authority relating to the probate of wills and granting of letters testamentary or of administration are defined and limited by statutory provisions which in all cases he must strictly observe. Having been appointed executor by the will, the register should

have given Miller the evidence of his appointment by issuing letters testamentary to him. If the executor became insane or otherwise incapacitated, all parties in interest were fully protected by the authority to vacate the letters testamentary vested in the court by the Acts of March 29, 1832, sec. 26, P. L. 196, and of May 1, 1861, sec. 2, P. L. 680.

On the appeal from the register's decree, the orphans' court heard testimony and found, inter alia, the following facts: " The testimony of the appellant's witnesses convinces us that John W. Miller has fully recovered his mental faculties, and was competent to act as the executor of Robert Miller when refused the appointment by the register. We conclude from the whole testimony that when Miller applied for letters on September 29, 1904, he was competent to act as executor. . . . John W. Miller is a man of means; he has given a bond in the sum of $60,000; for upwards of twenty months since his return he has conducted his own and public business with care and success. We believe he can settle the estate of Robert Miller with credit to himself and with safety to the estate." The hearing on the appeal was de novo, and under section 40 of the Act of March 15, 1832, P. L. 135, the orphans' court was required to take testimony and make it a part of the proceedings: Wickersham's Appeal, 75 Pa. 334; Bearmer's Appeal, 126 Pa. 77. If, therefore, we concede the authority of the register to hear testimony and determine the sanity of John W. Miller and his fitness to act as executor, the action of the register cannot be sustained. The orphans' court, after a full hearing of the case, finds no such incapacity to exist, and that Miller was competent to act as executor in administering the estate at the time letters were refused him by the register. This court is authorized by the section of the act just referred to " to affirm, reverse, alter or modify the decree of the orphans' court " on the testimony submitted to that court, and after an examination of the testimony we have no hesitancy in sustaining the court's findings of fact and in affirming the decree. We are, therefore, of opinion that the action of the register was irregular and illegal in refusing letters to Miller, on his own application in the first instance, and on the facts as to Miller's incapacity disclosed by the testimony in the case.

The decree of the orphans' court is affirmed.