## McNichol's Estate.

*Practice, O. C.—Counsel fees and accountant's compensation—Findings of auditing judge.*

1. Matters of counsel fees and compensation of accountants are peculiarly for the auditing judge, and his conclusion, like the verdict of a jury, will not be disturbed unless glaring error is apparent.

*Practice, O. C.—Attorney's fees and executor's compensation — Partial account — Apportionment of fees between general legacies and residuary estate.*

2. Where the balance for distribution on a partial account is insufficient to pay general legacies in full, the auditing judge may apportion counsel fees and special compensation to the accountant between the general legacies and the residuary estate, awarding a part of the counsel fees and executor's compensation against the fund for distribution, and reserving decision as to the balance of these claims until the residuary fund is brought before the court for distribution.

*Practice, O. C.—Letters testamentary—Attacking grant by Register—Res adjudicata.*

3. The grant of letters testamentary by the Register is a judicial act and can only be redressed by appeal; it may not be attacked collaterally at the audit of the executor's account.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1922, No. 31.
4 D. & C.

## McNichol's Estate.

The facts appear from the following extracts from the adjudication of the auditing judge, Thompson, J.:

"The record shows that Father Wastl renounced his right to act as executor in writing on Sept. 21, 1920, and withdrew the same in writing on Nov. 1, 1920. On Dec. 31, 1921, the Register awarded an issue to determine the validity of the will under discussion, and on July 13, 1922, this court, in an opinion by Judge Gest, sustained an appeal from said award and directed the Register to grant letters testamentary upon the will of the testatrix dated June 16, 1920, and codicils thereto, which the Register did on Aug. 10, 1922, by granting letters testamentary to Patrick P. Conway and Father Wastl. On page 32 of the testimony taken at the audit, when Patrick P. Conway was on the stand, he testified that he wrote Father Wastl in the summer of 1922, notifying him to meet him at the Register's office and take out letters testamentary. This Father Wastl did, and the Register granted letters testamentary to both of them. Counsel for Mr. Conway, the co-executor, now claims that the Register had no right to grant letters to Father Wastl after he had renounced. As the certificate under the seal of the Register of Wills is before me, showing that he has granted letters testamentary to Father Wastl and Mr. Conway, I cannot ignore the same nor hear any collateral attack upon the same. If they have been improperly granted, an appeal lies from the action of the Register in making the grant, and until that is done and determined I must recognize the persons to whom the Register has sufficiently granted letters testamentary. . . .

"Mr. Brown and Mr. Koons presented a claim for $10,000 for professional services rendered Mr. Conway in the will contest, and Mr. Conway also presented a claim for $5000 for special services rendered in the will contest, and testimony was taken in respect to both of these claims, from which it appeared that upon the death of Miss McNichol, a *caveat* was filed against the probate of her will and codicils on the ground that she lacked testamentary capacity and that the will was procured by the undue influence of Mr. Conway. I have examined the record and find that there were 418 pages of testimony taken before the Register, and twelve or fifteen conferences with respect thereto had with the Register, with the result that the Register awarded an issue, and an appeal from his so doing was sustained with the results as hereinbefore set forth. It is stated by counsel that the value of the estate is from $60,000 to $70,000, and the fund before me in the present account is between $21,000 and $22,000 of principal, which is not sufficient to pay the general legacies in full, and there can be no award in this adjudication to those claiming the residuary estate. I, therefore, cannot pass finally upon the claim for the $10,000 attorney fee and the $5000 fee for services to Mr. Conway until there is a fund before me sufficient to reach the residuary estate, nor can I make any decision in respect to the residuary clause in the will until such fund is before me: Clark's Estate, 26 Dist. R. 1046; Chapman's Estate, 18 Dist. R. 354. The testimony taken before me, in my judgment, shows that Mr. Brown and Mr. Koons are entitled to a fee for services rendered in the will contest, and that Mr. Conway is also entitled to something for his extra services rendered therein, in addition to his compensation as one of the accountants, and I have, therefore, concluded to allow Mr. Brown and Mr. Koons $2500 on their special services account, and to allow Mr. Conway $500 on his special services account, and the balance, if any, to be determined when a fund is brought into this court sufficient to make a payment to those entitled to the residuary estate. It is manifest, in view of what I will hereafter say as to who claims the residuary estate, that if the services of Mr. Brown and

McNichol's Estate.

Mr. Koons and Mr. Conway were rendered in supporting trusts contained in the will other than in the residuary clause, the amount awarded them would not be as much as if the entire residuary estate is subsequently determined to be given to the executors for charitable purposes, as the amount in controversy is always a very important element in determining the amount to be paid counsel."

He accordingly deducted from the balance for distribution $2500 for attorney's fees and $500 as special compensation to the executor.

*Ulysses S. Koons* and *Francis Shunk Brown,* for exceptions.

*Daniel C. Donoghue,* contra.

VAN DUSEN, J., April 4, 1924.—The third and fifth exceptions relate to the refusal of the auditing judge to allow to one of the executors the full amount of compensation claimed for defending the will. The executors were the residuary legatees under the will, either for themselves or in trust, as may be hereafter determined. This is only a partial account, and the funds embraced by it were not sufficient to pay legacies. It will not be determined who are the persons entitled to the residue until the residue comes before the court. As the residuary estate will have to bear its share of this compensation, the auditing judge did not finally pass upon the claim, stating that would be more properly determined when the residuary legatees were ascertained and could be heard; but he allowed a sum out of the fund before him on executors' services account.

The third and fourth exceptions relate to the refusal to allow the full amount claimed as counsel fee for services to the executor in defending the will. The same considerations apply to these exceptions.

The matters of counsel fees and compensation of accountants are peculiarly for the auditing judge, and his conclusion, like the verdict of a jury, will not be disturbed unless glaring error is apparent: Wolf's Estate, 22 Dist. R. 541; Merchant's Estate, 29 Dist. R. 299; Fisher's Estate, 65 Pa. Superior Ct. 297. We perceive no such error, especially under the circumstances recited, and these exceptions are dismissed.

The remaining exceptions relate to the issuance of letters testamentary to the Rev. Francis X. Wastl, together with the other accountant. Pending a contest of the will before the Register, Father Wastl renounced the executorship. Before the contest ended and letters issued, he withdrew his renunciation; and when the will was finally probated, the Register issued the letters testamentary in question. It was alleged on behalf of the other executor that the issuance of letters to Father Wastl was erroneous. The auditing judge held, however, that the decision of the Register on this point was conclusive; that his error, if any, could only be redressed by appeal from the grant of letters, and that his action could not be attacked collaterally at the audit of the executors' account, which was a separate proceeding. In this conclusion we concur. The error, if any, is not in lack of jurisdiction, as argued on behalf of the exceptant; the question is one of qualification or disqualification by reason of matters occurring since the death of the testatrix. The determination of the persons entitled is within the general jurisdiction of the Register; the grant of letters by him is a judicial action, and, like other judgments, cannot be attacked collaterally: Carpenter *v.* Cameron, 7 Watts, 51. In that case the will named no executor, but the Register granted letters testamentary to the widow, who was the residuary legatee. In sustaining an action brought by this executrix, the court observed: "It was said if this probate was not within the jurisdiction of the Register, it was utterly void,

4 D. & C.

and should have been rejected; but this was not, and could not be, seriously pressed. There is no allegation that the will was not duly proved, and before the Register, and he alone had jurisdiction to grant letters testamentary, or of administration with the will annexed; if he mistook, an appeal was the remedy."

So in Clark v. Clark, 6 W. & S. 85, which was an action brought by an administrator, the court overruled, for the same reason, an objection to the standing of the administrator on the ground that the Register had mistakenly granted letters to a person not entitled. See, also, the discussion in Ziegler v. Storey, 220 Pa. 471; also, Miller's Estate, 216 Pa. 247, cited by the auditing judge, and Cunnius v. School District, 206 Pa. 469.

These exceptions are dismissed and the adjudication is confirmed absolutely.