[No. 16304.  *En Banc.*  October 6, 1921.]

*In the Matter of the Estate of* LEVI M. LANGILL.
E. E. LANGILL, *Appellant,* v. BESSIE LANGILL STEWART
*et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS (8, 13)—APPOINTMENT—DIS-
QUALIFICATIONS—STATUTES—CONSTRUCTION.  In appointing an ad-
ministrator of a decedent's estate the court acts judicially, and, if
it finds that an applicant who has a prior right of appointment
under the order prescribed by Laws 1917, ch. 156, § 61, is unfit to
be trusted with the funds of the estate, the court is justified in
denying his application for letters (PARKER, C. J., HOLCOMB, and
MITCHELL, JJ., dissent).

Appeal from an order of the superior court for
Pierce county, Chapman, J., entered July 14, 1920,
denying petitioner's application for letters of adminis-
tration, and appointing another as administrator of an
estate, after a hearing before the court.  Affirmed.

*Walter M. Harvey,* for appellant.

*Guy E. Kelly* and *Thomas MacMahon,* for respond-
ents.

FULLERTON, J.—On May 22, 1920, Levi M. Langill
died intestate in Pierce county, Washington, leaving
an estate therein subject to administration.  The ap-
pellant, E. E. Langill, within forty days after the death
of Levi M. Langill, applied for letters of administra-
tion upon his estate.  His application was opposed by
other heirs of the estate, and, after a hearing, the court
denied the application, appointing one Harris G. Ward
as administrator of the estate.  E. E. Langill appeals.

The evidence need not be detailed at length.  The
applicant admits a misuse of a part of the funds of the
estate, and the evidence otherwise convinces us that

[1]Reported in 201 Pac. 28.

there is a grave probability that he has misappropriated another very considerable part. It shows, moreover, that his general character is such as to unfit him for the administration of any form of trust.

But the statute (Laws of 1917, ch. 156, p. 656, § 61) prescribes the order in which persons are respectively entitled to administer upon an estate, and elsewhere (§ 87, p. 663, Id.) prescribes who are disqualified to act. The evidence shows that the appellant is first in order of the enumerated persons entitled to appointment, and shows further that the disqualifications he was found to possess are not among the statutory disqualifications. The appellant contends that these provisions of the statute are mandatory; that the enumeration of certain disqualifications by the statute precludes the idea that other disqualifications may exist; and that, in determining who may be appointed as an executor or administrator, the courts are without power or right to adjudge a person disqualified on grounds which the statute does not make disqualifications.

We are unable to agree with these contentions. The statute, while it defines certain things as disqualifications, does not say in terms, nor do we think by necessary implication, that there shall be no other. The purpose of administration is to preserve the estate and cause it to pass to the heirs and distributees without waste or loss, and without undue delay. In appointing an administrator the court acts judicially, not ministerially, and it is as much its judicial duty to guard an estate against possible waste and loss as it is to take action against waste and loss after it has occurred. It is true that the right to administer an estate is a valuable right. But, to paraphrase the language of Mr. Justice Woods in *Ex parte Small*, 69 S. C. 43, 48 S. E. 40, no right is arbitrary or un-

qualified by a correlative right. The right of those interested to have an estate administered and distributed in accordance with law is the dominant right; the right of any particular person to administer the estate is a secondary right. When the allowance of the claim to exercise this secondary right may result in defeating the primary right, it should be refused.

It may be that our conclusion trenches upon the weight of judicial authority. But the cases, for the greater part, are based upon and follow the rigid rules of the common law. In this state, the administration of estates is wholly statutory, and we feel free to give the statutes that construction which in our judgment will best accord with their purpose and spirit.

The order is affirmed.

MAIN, BRIDGES, MACKINTOSH, and TOLMAN, JJ., concur.

HOLCOMB, J. (dissenting)—By the majority decision the disintegration of the probate code of 1917 is begun. Laws of 1917, ch. 156, p. 642.

The majority say: "The statute, while it defines certain things as disqualifications, does not say in terms, nor do we think by necessary implication, that there shall be no other." And in conclusion the majority say: "In this state, the administration of estates is wholly statutory, and we feel free to give the statutes that construction which in our judgment will best accord with their purpose and spirit."

This reasoning is wholly inconsistent and illogical. Furthermore it is not giving the statutes a construction to accord with their purpose and spirit. It is positively legislating and creating disqualifications which the statutes did not create.

It may be granted that appellant is not a very admirable character, and not such a person as any

court or judge would desire, if uncontrolled by
statute, to grant any trust to; but we cannot disregard
positive provisions of the probate statutes.

The record shows that appellant had used the sum
of $150, according to his own admission, of the ready
funds of the estate, after the death of his father, in
making a visit to his sister, Emily Burchard, at Clin-
ton, Iowa. He candidly admitted the use of this
money; but as he would be compelled to give bond if
appointed administrator, the provisions of the statute
requiring him to fully account for all of the estate, the
terms of his bond would be amply sufficient to protect
the persons interested in the estate.

The record also shows that Emily Burchard, the
only other eligible on a parity with appellant for ap-
pointment as administrator, while at first objecting to
his appointment, afterwards withdrew her objection
and prayed for his appointment, leaving no others
objecting except grandchildren, who were fourth in
the order of eligibles.

The record also shows that Charlotte Langill, the
wife of decedent, and who shortly before the death of
Levi M. Langill had been adjudged by the superior
court, upon the certificates of two competent physi-
cians, as insane, had shortly thereafter been pro-
nounced sane. Upon her being adjudged insane, ap-
pellant was appointed guardian of her estate, and upon
her discharge from custody, his appointment had been
annulled and he had been ordered forthwith to report
as guardian to the superior court. His attorney im-
mediately moved to set aside the order discharging
him as guardian, upon the ground that it was made
without notice, and without any hearing, and without
any testimony or evidence in support of the same, and
that the court was without jurisdiction of the parties

or the subject-matter. He made no report as guardian up to the time of the hearing upon the petition for appointment of administrator. Upon the conclusion of the hearing on the appellant's petition for appointment of administrator, the court orally announced that nothing had been shown upon the hearing to show that appellant was not a fit and proper person, except that he had failed to report and account as guardian of the estate of Charlotte Langill, as directed by the superior court, and that his disobedience of such order was a very good indication that he ought not to be appointed administrator. It was adjudged, therefore, that appellant was not a fit and proper person to be appointed administrator. That is the only ground upon which the trial court refused to appoint him administrator, but the majority seem to find some other.

The probate code, Laws of 1917, p. 656, ch. 156, in § 61, provides:

"Administration of the estate of the person dying intestate shall be granted to some one or more of the persons hereinafter mentioned and they shall be respectively entitled to the following order: . . .

"Next of kin in the following order: 1, child or children; . . ."

Section 87 of the code provides:

"The following persons are not qualified to act as executors or administrators: Corporations, non-residents of this state, minors, persons of unsound mind, or who have been convicted of any felony or misdemeanor involving moral turpitude."

Appellant fell within none of the disqualified classes, and while he may have been guilty of a felony or of a misdemeanor involving moral turpitude, he had not been convicted thereof. Yet the majority say that, because the appearances are that he has been guilty of such an offense, although not convicted, and although

the statute specifies those who have been convicted of a felony or of a misdemeanor involving moral turpitude as being disqualified—they read into the statute that, if the court suspects that the applicant has been guilty of a felony or of a misdemeanor, etc., he shall not be appointed.

At common law, eligibility was the rule, and disqualification for the granting of administration the exception. Illiteracy, ignorance, interest in the estate, immorality, and even criminality were not regarded as disqualifications; but idiocy and insanity were.

"In the United States the right to letters of administration is generally regulated by statute, and more or less elaborate provisions are made by such laws determining the priorities of the various relatives of different degrees." 11 R. C. L., p. 34, § 22.

"Next after husband and wife the preference as to letters of administration is usually given under modern statutes to the next of kin, or to the nearest relative of the deceased. . . ." 11 R. C. L., p. 37, § 26.

"Even under statutes regulating the priorities of those entitled to administer, considerable discretion is given the court in determining who shall be appointed. Where the statute provides that the surviving spouse or next of kin, or both, as the court may determine, must be appointed, if suitable and competent to discharge the trust, it is for the court to determine whether such persons are incompetent or unsuitable. A statute, one section of which empowers a court to appoint as executors persons named in a will *if they are fit persons,* and a subsequent section of which *enumerates the persons who are not deemed fit,* vests in the court a discretion to determine the existence of the particular causes of disability enumerated, *but does not vest a broad discretion to determine what are causes of disability."* 11 R. C. L., p. 42 (Italics ours).

It will be noted that our statute does not read as indicated in the text above, that certain persons must

be appointed *if suitable and competent to discharge the trust,* but does specify certain persons in certain order who shall be appointed, and the subsequent section specifies certain persons who shall be disqualified; and since at common law and in many of the states it is generally true that the moral fitness of a person to be appointed executor or administrator should not be inquired into by the court, and since our statute makes no such provision, but does make certain specific provisions disqualifying one from appointment, such moral qualifications are undoubtedly not required.

If courts having jurisdiction of probate matters can deviate from the order of eligibles as provided by statute in § 61, *supra,* and can find disqualifications not found in § 87, *supra,* the entire provisions are useless and ineffective, and the courts will be at liberty to appoint any person selected by them upon application for appointment of an administrator.

True, "the purpose of administration is to preserve the estate and cause it to pass to the heirs and distributees without waste or loss, and without undue delay;" but as to all those matters, those interested would be amply protected by good and sufficient bond.

The majority opinion is manifestly wrong and the order appealed from should be reversed.

PARKER, C. J., and MITCHELL, J., concur with HOLCOMB, J.