[No. 24932. *En Banc.* October 18, 1934.]

THE STATE OF WASHINGTON, *on Relation of Anton M. Lauridsen et al., Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

*Joseph Matsen* and *Eli M. Paulson,* for relators.

*Hyland, Elvidge & Alvord,* for respondents.

[1] Reported in 37 P. (2d) 209.

STEINERT, J.—The relators filed a petition in the superior court of King county, seeking (1) the revocation of letters of administration formerly granted by the court to certain individuals in the estate of Marie Pederson, deceased; and (2) the appointment of themselves as executors under the last will of Marie Pederson. The court denied their petition. The relators thereupon filed in this court an application for a writ to review such order, which application was granted, and the matter is now before us upon the return to the writ.

On March 6, 1931, Marie Pederson executed her last will and testament, in which she nominated and appointed Hans Pederson, her husband, as executor, to serve without bond. The will further provided that, in the event that Mr. Pederson should die or be unable to complete his trust, then the relators herein should act as her executors under the will, upon giving bond in the sum of five thousand dollars each; further, that, if any of the relators should die or fail to qualify, then certain alternates, named in the will, should act in their places. The will is, by its terms, a non-intervention will.

Mrs. Pederson died on March 6, 1932, one year after executing her will. On March 10, 1932, her will was admitted to probate upon the petition of Hans Pederson, her husband, who thereupon duly qualified as executor. Inventory and appraisement was filed showing the appraised value of the wife's one-half interest in the community estate to be $389,514.70, and the appraised value of her separate estate to be $10,500, or a total of $400,014.70. The total community estate was therefore of the appraised value of $779,029.40. The community debts amounted to approximately $635,000, a very substantial part of which was in the form of mortgage indebtedness. The bulk of the estate con-

sists of real estate, a large part of which is improved with apartment houses and other buildings, heavily mortgaged and burdened with accruing delinquent taxes. After the filing of the inventory and appraisement, a decree of solvency was entered May 21, 1932.

In December, 1931, prior to Mrs. Pederson's death, Mr. Pederson had suffered a paralytic stroke, and one side of his body was badly affected. The death of his wife proved a great shock to him in his weakened condition, and although he qualified as executor of her will, it soon became apparent that its burdens were too great for him. On June 23, 1932, Mr. Pederson, realizing that he did not have the strength to carry on the extensive contracting business in which he had been engaged for many years, and which was at that time in a rather complicated condition, desired to be relieved from his duties as executor of his wife's estate. The constant demands of creditors seem to have been a potent factor in his decision to resign.

In his written resignation, he requested the appointment of Mr. George L. Haley as administrator with the will annexed. Mr. Haley, a contractor, had been a friend and business associate of Mr. Pederson for many years, was well acquainted with Mr. Pederson's affairs, and had Mr. Pederson's full confidence. A petition was accordingly filed requesting the appointment of Mr. Haley as such administrator. Notice of the hearing was given by the posting of three notices, as required by the statute (Rem. Rev. Stat., § 1433 [P. C. § 9949]). A number of creditors of the estate and of Mr. Pederson attended the hearing, and requested that Mr. Ivan L. Hyland, who had been Mr. Pederson's attorney for many years and who was intimately acquainted with his affairs, be appointed as co-administrator. The court accepted this suggestion, and ap-

pointed both Mr. Haley and Mr. Hyland as administrators of the estate with the will annexed.

It appears that, when the appointment of Mr. Haley and Mr. Hyland was made, the court was not advised of the fact that the will nominated and appointed relators herein as executors to act in the event that Mr. Pederson should die or should for any reason be unable to complete his trust. In fact, the record is quite convincing that no one who had been connected with the administration of the estate up to that time had ever considered, or had had their attention particularly called to, that provision of the will. This oversight is accounted for by the fact that Mr. Pederson was expected to, and actually did, qualify, and for a time did function as executor, and by the further fact that the serious condition of the affairs of the estate demanded immediate and continuing attention. The will had been drawn by an attorney who was in no way connected with Mr. Hyland.

When Mr. Pederson decided to resign, the uppermost thought in the mind of everyone then connected with the estate was to proceed with its administration in a way that would best conserve it and protect the interests of all concerned therein. However, it must be said, and emphasized here as a matter of fact, that, at the time that the administrators were appointed, none of these relators, with the possible exception of Clarence Madsen, knew that they had been named in the will as executors; further, that they did not learn of that fact until a few days before Mr. Pederson's death in September, 1933.

In the order appointing Mr. Haley and Mr. Hyland as administrators, the court directed that

". . . this estate be administered by the administrators with the intervention of the court, and the

order of solvency heretofore entered be and is hereby vacated."

However, no finding or order has ever been made to the effect that the estate is insolvent.

The record shows, by voluminous reports, that the administrators have spent a great deal of time and effort in administering the estate and endeavoring to wind up a considerably involved state of affairs.

During Mr. Pederson's last illness, and a few days before his death on September 6, 1933, the relators, or at least two of them, learned, for the first time, that they had been named by Mrs. Pederson as executors of her will in the event that Mr. Pederson was unable to complete his trust. Within a short time after his death, they filed their petition hereinabove referred to.

■ The first and fundamental question to be decided is whether the right of a testator to name and appoint an executor to administer his, or her, estate may be superseded by the court by appointing an administrator of the estate, and if so, under what circumstances the court may so act.

Rem. Rev. Stat., § 1415 [P. C. § 10042], provides:

"All courts and others concerned in the execution of last wills shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters brought before them."

Rem. Rev. Stat., § 1417 [P. C. § 9933], provides:

"After probate of any will, letters testamentary shall be granted to the persons therein appointed executors. If a part of the persons thus appointed refuse to act, or be disqualified, the letters shall be granted to the other persons appointed therein. If all such persons refuse to act, letters of administration with the will annexed shall be granted to the person to whom administration would have been granted if there had been no will."

Rem. Rev. Stat., § 1457 [P. C. § 9892], provides that corporations (with certain exceptions), non-residents of this state, minors, persons of unsound mind or those who have been convicted of certain crimes, shall not be qualified as executors or administrators.

These statutes are expressive of, and in harmony with, the universal rule that a testator may name the person who shall be the executor of his or her will, and when so named, letters testamentary shall be issued to such person unless he be ineligible.

"Letters testamentary must ordinarily be issued in accordance with the will of the testator, unless the person named as executor is ineligible. When asked to appoint the person whom a testator has nominated as executor, the court cannot refuse to make the appointment on the ground that reasons are alleged which warrant the belief that the executor will subsequently incur disabilities specified, or will so conduct himself that grounds for revocation of the letters will arise in the future. It is not uncommon for a testator to make his will for the sole purpose of nominating an executor to administer his estate. Mere technicalities will not be permitted to stand in the way of the appointment. For example the fact that a person nominated by a will to execute it is designated as 'executor and administrator' does not render the provision void. Great liberality is usually exercised in committing the execution of wills to those indicated in any manner by the will as the testator's choice, so as not to disappoint his wishes, regardless of technicalities. The court itself can make no original appointment of an executor, its power being limited to recognizing and approving or disapproving an appointment made by the testator. So far as possible, the courts carry out the intention of the testator by seeing that the trust is committed to the one designated by the testator. To do this the nominated executor almost invariably is given an opportunity to accept or decline the executorship." 11 R. C. L. 31, § 17.

See, also, to the same effect, *Farmers' Loan & Trust Co. v. Security Trust Co.,* 79 Ind. App. 537, 138 N. E.

97; *Adams v. Readnour,* 134 Ky. 230, 120 S. W. 279; *Ricks v. Johnson,* 134 Miss. 676, 99 So. 142; *Secrest v. Secrest,* 146 Okla. 235, 294 Pac. 91; *In re Haag's Will,* 99 Misc. 164, 165 N. Y. Supp. 401; *In re Walsh's Will,* 147 Misc. 281, 264 N. Y. Supp. 72; 3 Alexander on Wills, § 1222; 2 American Law of Administration, p. 776, § 229; 23 C. J. 1023, §§ 64, 65; 1 Bancroft's Probate Practice, p. 434, § 236; 3 Schouler on Wills (6th Ed.), §§ 1494 and 1539.

This court has declared that, in the absence of some controlling statute, the power to name an executor to administer an estate is coextensive with the power to devise or bequeath the estate itself. *In re Guye's Estate,* 54 Wash. 264, 103 Pac. 25, 132 Am. St. 1111.

The weight of authority, generally, is also to the effect that the statutory grounds of disqualification are exclusive, and that the courts have no right to add thereto, unless the court has been given a discretionary power in that respect. 1 Bancroft's Probate Practice, pp. 423-4, § 228.

In this state, however, there has been a departure from that rule, at least in cases of intestacy, and this court has held that the disqualifications enumerated in the statute are not exclusive. *In re Langill's Estate,* 117 Wash. 268, 201 Pac. 28; *In re Bredl's Estate,* 117 Wash. 372, 201 Pac. 296; *In re Stott's Estates,* 133 Wash. 100, 233 Pac. 280.

In the *Langill* case, it was said:

"The statute, while it defines certain things as disqualifications, does not say in terms, nor do we think by necessary implication, that there shall be no other. The purpose of administration is to preserve the estate and cause it to pass to the heirs and distributees without waste or loss, and without undue delay. In appointing an administrator the court acts judicially, not ministerially, and it is as much its judicial duty to guard an estate against possible waste and loss as

it is to take action against waste and loss after it has occurred. It is true that the right to administer an estate is a valuable right. But, to paraphrase the language of Mr. Justice Woods in *Ex Parte Small*, 69 S. C. 43, 48 S. E. 40, no right is arbitrary or unqualified by a correlative right. The right of those interested to have an estate administered and distributed in accordance with law is the dominant right; the right of any particular person to administer the estate is a secondary right. When the allowance of the claim to exercise this secondary right may result in defeating the primary right, it should be refused.''

In using this language, the court recognizes that its conclusion ''trenches upon the weight of judicial authority.''

In the *Bredl* case, the court said:

''The preference rights given by statute to administer upon an estate, while recognized as valuable rights, are not absolute. To administer an estate is to administer a trust, and the rule of the statute is not so hard and fast as to require the court to appoint one as an executor or administrator who has given evidence of dishonesty of purpose in seeking the appointment, or who has betrayed a gross unfitness in other respects to administer the trust, even though he have the preference right given by the statute.''

The *Stotts* case affirmed the rule laid down in the *Langill* case, and said:

''The relation is such that he who serves as administrator should be one who can act impartially, and in those jurisdictions such as this where the court is not bound by mandatory statutory provisions on the subject of preference right of appointment, nor by enumerated causes of disqualification to act, no one should be appointed who is hostile to the observance of and respect for the rule that the purpose of administration is to both collect and preserve the estate and impartially assist in passing it to those beneficially interested according to the priority of their rights.''

Those cases all had to do with the preference right of appointment under Rem. Rev. Stat., § 1431 [P. C. § 9947], relating to intestacy. That section, however, contains the same mandatory language as § 1417 [P. C. § 9933], *supra,* relating to the granting of letters testamentary to persons named as executors in the will.

In each of those cases, the court held, under the facts shown, that the parties claiming the right of appointment as administrator were disqualified by reason of fraud committed by them in connection with the estate. In other words, the court held that such fraud was a disqualification, though not specifically enumerated in § 1457 [P. C. § 9892].

In the case of *In re Robinson's Estate,* 149 Wash. 307, 270 Pac. 1020, this court held that the trial court was not bound or concluded by nomination made in the will, and refused to confirm and appoint the executor named therein, because, as found by the trial court, he had wrongfully suppressed the will. Thus, it appears that fraud may be a disqualification, even under § 1417 [P. C. § 9933], with reference to executors.

But no such question is involved here. The relators have not been shown to be disqualified in any way whatever. Their competency, integrity and willingness to administer the estate properly and expeditiously are not challenged. The only contention here is that, because of the particular circumstances of the instant case, the creditors may not get as much if the course of the present administration be interrupted as they otherwise would. This suggestion, however, can only be a conjecture or an apprehension. There are no facts shown by the record that such will be the case, and the presumption is, until the contrary be shown, that the relators will administer the estate efficiently and economically. Even under the rule fol-

lowed in this state, the will of the testator must govern, unless the court finds that the executor named by him is, in fact, disqualified.

Upon the first and fundamental question, therefore, we hold that, in the absence of fraud connected with the will or the estate, and in the absence of any statutory disqualification, the right of the testator to appoint an executor of his will may not be superseded by the court by appointing an administrator in his place.

The respondents contend, however, that, the relators having failed to come forward and assert their rights at the time of the appointment of the administrators, and for a considerable time thereafter, they can not now be heard to complain. The answer to this argument is that relators, with the possible exception of Mr. Madsen, did not know of their rights until a long time after the appointment and just before the commencement of the present proceeding. Unless the executor named in the will renounces the trust or waives his right to execute it, he may not be supplanted by an administrator appointed by the court.

"Letters of administration with the will annexed should not be granted unless the exigency is made apparent; executors, if alive and competent, should have full opportunity to take or renounce the trust; any renunciation on their part should be made in proper form; and if, out of several executors named, one is willing and competent to serve, such administration is not to be granted.

"And any order of court which grants administration with the will annexed to another before the executor has formally renounced the trust is voidable upon his application made in due time." 3 Schouler on Wills, Executors and Administrators (6th Ed.), p. 1776, § 1560.

See, also, 1 Bancroft's Probate Practice, pp. 436, 437, § 238; Alexander on Wills, § 1844; 24 C. J. 1160;

*Farmers' Loan & Trust Co. v. Security Trust Co.,*
79 Ind. App. 537, 138 N. E. 97; *Adams v. Readnour,*
134 Ky. 230, 120 S. W. 279; 11 R. C. L. 31, § 17; *In re
Miller's Estate,* 216 Pa. 247, 65 Atl. 681.

▮ Respondents next contend that the court's
order of appointment should stand, because the estate
is now insolvent. In passing, it may be observed that
no order declaring the estate insolvent has ever been
entered. All that the court has ever done was to
vacate a former order of solvency. Whether the estate
be now solvent or insolvent does not seem to have been
judicially determined. In any event, however, our
probate code does not prescribe any specific procedure
for the administration of insolvent estates. Rem.
Rev. Stat., §§ 1462 and 1463 [P. C. §§ 9967, 9968],
provide that, in case of non-intervention wills, when
it appears to the court that the estate is fully solvent,
the executor shall have power to manage and admin-
ister the estate without the intervention of the court.
The corollary to this is that, until the estate is found
and declared to be solvent, it must be administered
under the direction of the court and subject to its
orders. But the insolvency of the estate does not
affect the right of a qualified executor to be appointed.
It only affects the method or manner in which he shall
administer the estate.

▮ The respondents finally contend that the order
appointing them as administrators is a final and ap-
pealable order and a judgment *in rem.* It is true that
the administration of an estate, generally, is a pro-
ceeding *in rem. Dooly v. Russell,* 10 Wash. 195, 38
Pac. 1000; *Furth v. U. S. Mortgage & Trust Co.,* 13
Wash. 73, 42 Pac. 523. It is also true that, when the
court has once obtained jurisdiction of the *res,* all
presumptions and intendments are to be taken in favor
of the regularity and validity of its proceedings. As

a rule, therefore, an order appointing an administrator is not subject to collateral attack. 11 R. C. L. 74.

But in a direct attack, as this proceeding is, inquiry may be made as to the regularity and validity of the order of appointment.

"Where letters of administration have been granted on the estate of a decedent to one not entitled to the appointment, the acts of such administrator are valid although the order appointing such person may be voidable in a direct proceeding instituted by those having a superior right. This rule rests upon the doctrine that in such cases the essential basis of jurisdiction exists, and the appointment of the wrong person is but an irregularity, subjecting the order of appointment to direct attack, but not invalidating acts done in pursuance of the law, in the course of administration by him who has been erroneously appointed." 11 R. C. L. 86, § 84.

See, also, 3 Schouler on Wills (6th Ed.), p. 1817, § 1650; 23 C. J. 1103, § 278.

The reason for the rule is well expressed in 1 Bancroft's Probate Practice, p. 548, § 288, as follows:

"If the court were precluded from a reinvestigation of the facts upon which letters were granted, the veriest impostor might obtain letters and, after the period for appeal had elapsed, remain securely in an office to which he has no right, with no court having power to remove him."

This case presents some unfortunate aspects. The administration has progressed over a period of nearly two years. A great deal of effort has been expended, and much of the work entailed has been completed. In the very nature of things, the present administrators are better qualified than at least two of the relators would be. We except Mr. Stahl because the record shows that he was in the employ of Mr. Pederson for many years, that he is now in the employ of the pres-

ent administrators, and is fully conversant with the affairs of the estate. We are called upon, however, to adjudicate the rights of individuals, and since we cannot say that they are in any way disqualified, we are not permitted to deprive them, or the testatrix naming them, of the rights which the law secures to them. It may be true, also, that the relator Clarence Madsen, by reason of his early knowledge of the contents of the will, has now forfeited his right to be appointed as executor. That is a matter, however, with which the administrators would not be concerned. If Mr. Madsen were not permitted to qualify, the will designates an alternate to serve in his place.

We are compelled to conclude that the court was in error in refusing to set aside the order appointing the administrators and in refusing to appoint, as executors, the persons entitled thereto under the will. The order of the court is, therefore, reversed, with direction to the trial court to proceed in compliance with the views herein expressed.

MILLARD, MITCHELL, GERAGHTY, and BLAKE, JJ., concur.

MAIN, J. (dissenting)—I am unable to concur in the majority opinion, because, as I view it, that opinion unduly restricts the previous holdings of this court, and gives a too rigid construction to the statute.

Rem. Rev. Stat., § 1431 [P. C. § 9947], provides that administration of the estate of the person dying intestate

". . . shall be granted to some one or more of the persons hereinafter mentioned, and they shall be respectively entitled in the following order: . . ."

Section 1417 [P. C. § 9933] provides that, after the probate of any will, "letters testamentary shall be

granted to the persons therein appointed executors.
. . .''

These two statutes are, in substance and effect, the same. In one, it is said that administration "shall be granted," as therein provided. In the other, it is said that, after probate of any will, letters testamentary "shall be granted" to the persons therein appointed executors.

Speaking with reference to the administration statute, in *In re Langill's Estate,* 117 Wash. 268, 201 Pac. 28, it was said:

"The right of those interested to have an estate administered and distributed in accordance with law is the dominant right; the right of any particular person to administer the estate is a secondary right. When the allowance of the claim to exercise this secondary right may result in defeating the primary right, it should be refused.

"It may be that our conclusion trenches upon the weight of judicial authority. But the cases, for the greater part, are based upon and follow the rigid rules of the common law. In this state, the administration of estates is wholly statutory, and we feel free to give the statutes that construction which in our judgment will best accord with their purpose and spirit."

It will be noted that it is there said that the right of those interested to have an estate administered and distributed in accordance with the law is "the dominant right," and the right of any particular person to administer the estate is "a secondary right." It also appears that the court recognized that it was not following, in so construing the statute, the rigid rules of the common law, as supported by the weight of judicial authority. The case of *In re Bredl's Estate,* 117 Wash. 372, 201 Pac. 296, is to the same effect, and recognizes that the preference right given by statute to administer upon an estate is a valuable right. In

*In re Stotts' Estates,* 133 Wash. 100, 233 Pac. 280, the person given the preference right of appointment under the statute was denied that right because she was "hostile to the creditors, the collection of whose claims she would hamper and delay. . . ."

As I understand the construction of the statute given in the cases cited, it does not limit the right to depart from the statute solely to the question of fraud. I do not think that it can be said that there was any fraud in the *In re Stott's Estates* case.

The statute, § 1417 [P. C. § 9933], with reference to the probate of a will, containing the same language as the administration statute, should, in my opinion, be given the same construction. With reference to the granting of letters testamentary to the person named in the will as executor in *In re Robinson's Estate,* 149 Wash. 307, 270 Pac. 1020, it is said:

"Upon objections by the respondents, the superior court refused to confirm and appoint Harry W. Robinson as one of the executors of the will. Very great respect will be given by the court to the suggestion or nomination by a testator in this respect; but the trial court is not bound or concluded by a nomination made in the will."

The right to an appointment of administrator is a valuable right, as also is the right of the one named in the will to be executor.. These rights originate in the same source, to wit, the legislature. Rem. Rev. Stat., § 1394 [P. C. § 10021], provides that every person who shall have attained the age of majority and being of sound mind "may by last will devise all his or her estate, real and personal." The right there given by statute is not an inherent one, but one which is subject to legislative control.

In 28 R. C. L. 71, it is said:

..."Although it has frequently been held that the privilege of making a will is not an inherent right

and is subject to legislative control, the privilege is one which is accorded to nearly all persons over twenty-one years of age."

It can hardly be doubted that the persons named by the probate court in this case, owing to their familiarity with the conditions of the estate, were the best qualified to administer upon it, and the rights of the parties interested in the estate will be best served by sustaining their appointment. In my opinion, the judgment of the trial court should be affirmed.

For the reasons herein indicated, I dissent.

BEALS, C. J., HOLCOMB, and TOLMAN, JJ., concur with MAIN, J.