[No. 16750.  Department One.  October 24, 1922.]

*In the Matter of the Estate of* MARIOTT SNYDER, *Deceased.*

HARMON SHOCKEY *et al., Appellants,* v. O. V. MANRING, *as Executor etc., Respondent.*[1]

EXECUTORS AND ADMINISTRATORS (165)—COMPENSATION—AMOUNT—DELAY IN SETTLEMENT OF ESTATE—EVIDENCE. An allowance of less than $1,500 a year to an executor for settling a large estate, requiring the land to be farmed and collections made, will not be held excessive, although there was some unnecessary delay through failure · to give notice to creditors.

SAME (45)—MANAGEMENT OF ESTATE—COMMINGLING FUNDS. While an executor should not commingle the trust funds with his own in one bank account, he is not guilty of misconduct in doing so if he ultimately accounts for all funds to those entitled thereto.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered May 6, 1921, in favor of the defendant, approving the final account of an executor after a hearing upon objections thereto. Affirmed.

*Stephens & Jack,* for appellants.

*Joseph Rosslow* and *Voorhees & Canfield,* for respondent.

BRIDGES, J.—This case arises on exceptions taken by the appellants to the final report of the respondent, as

[1]Reported in 209 Pac. 1074.

executor of the last will of Mariott Snyder, deceased.

On February 19, 1918, the respondent became the executor of the will above mentioned. It provided that the estate should be settled without the intervention of any court. The assets of the estate were appraised at considerably more than $100,000, and consisted of some cash, some capital stock of a corporation, large tracts of farming land, and a great many notes and mortgages. The executor proceeded with the settlement of the estate without the intervention of the court until some controversy arose between himself and the appellants, who are legatees named in the will; at which time, at the request of the executor, the estate was put into court and there settled.

Some six months after his appointment, the executor paid the various legatees cash in the sum of $21,000. He filed his final report and petition for distribution in March, 1921. It was to this report that the legatees made their objections. These were of a general character and charged that the executor had not properly administered the estate; that he had not made a distribution within a reasonable time after his appointment; that he had not used due dispatch in the discharge of his duties; that he had commingled the funds of the estate with his own private funds, and that he had used the estate funds for his own benefit.

After a complete hearing, the court approved the report, except as to about $1,000, with which the executor had credited himself; fixed the executor's fees and those of his attorneys, and directed that all of the assets other than the real estate be delivered into the possession of the clerk of the court for the persons entitled thereto.

One of the contentions is that the executor should be penalized for his unreasonable delay in the settle-

ment of the estate and the distribution of the assets according to the will. The debts of the estate were relatively small, but there was a cash bequest of $5,000. The executor had to discharge the obligations of the estate to both the United States and the state of Washington, and there was much necessary delay in so doing. The legatees under the will were unknown to the executor and had their residence in various parts of the United States, and the executor was put to considerable trouble and delay in learning of their whereabouts and establishing to his own satisfaction the identity of the persons entitled to receive under the will. In addition to these things, the will provided that "my land shall not be sold until two years from the date of my death." The executor testified that he considered it was his duty under the will to maintain the estate for at least two years and then sell the real estate. While such was an unwarranted belief on the part of the executor, we cannot say that it does not, at least to some extent, excuse the delay in the settlement of the estate. It must also be remembered that, within a few months after he was appointed executor, he distributed to the legatees $21,000 in cash. There was a delay, however, of six months for which there is less excuse. It appears that, when the executor was nearly ready to settle the estate, he learned for the first time that through oversight no notice to creditors had been given, as required by the probate code. This, without doubt, caused some delay in the settlement of the estate.

Not till the middle of 1920 did the legatees raise any objections to the manner in which the estate was being administered. Thereafter there was but little delay in closing the estate. For these delays the appellants seek to have the executor and his attorneys penalized by reducing the compensation allowed to them. The

court allowed the executor $4,000 and his attorneys $3,500. We think that the estate might well have been sooner settled and that there were probably some unnecessary delays. But we must take into consideration all the circumstances. There is nothing to show that the delays were wilful. The estate was a large one. The legatees received the benefit of the services of the executor and his attorneys. The land had to be farmed and collections had to be made. These the executor attended to. The allowance to him was less than $1,500 per year, which seems small enough. The trial court had a more intimate knowledge concerning these things than we can possibly obtain from the record, and we are not disposed to interfere with his conclusions.

But it is further contended that the executor kept the funds of the estate in his own private accounts at banks, and that they were commingled with those of his own, and that he used them for his own private benefit. It would appear from the testimony that the executor did commingle the funds of the estate, at least to some extent, with his own, and in part kept the estate money in his own private bank account. Yet there is nothing in the testimony to convince us that the executor at any time used for his own private ends any of the estate funds. The manner in which he had kept those funds is certainly not to be commended. Every executor should keep the trust funds in a bank account to the credit of himself as such executor, if he keeps them in a bank at all, and should not commingle them with his own money. However, there is no provision of law which requires estate funds to be separately kept, and if the executor ultimately accounts for all of such funds, it cannot be said that he is guilty of misconduct, or that those entitled to receive under the will have been injured. The trial court found, and,

so far as we can learn from the testimony, the finding was entirely justified, that the final report amply accounts for all the property and money belonging to the estate as it came into the hands of the executor.

Under all the circumstances, we do not feel disposed to reverse or modify the judgment of the trial court.

The disposition we have made of the case upon its merits makes it unnecessary for us to determine the very serious question presented by respondent's motion to dismiss the appeal.

Judgment affirmed.

PARKER, C. J., FULLERTON, and MITCHELL, JJ., concur.