[No. 23598. Department Two. March 8, 1932.]

*In the Matter of the Estate of* W. R. THOMAS, *Deceased.*[1]

*Stephen E. Chaffee* and *Allen & Walthew,* for appellants.

*Short & Short, E. E. Wager,* and *Jay A. Whitfield,* for respondents.

[1] Reported in 8 P. (2d) 963.

MILLARD, J.—This is an appeal by Howard Thomas, L. Gertrude Robillard, James H. Thomas, Emma Schreyer, and Anna McKeen, five of the decedent's surviving children, from an order appointing L. R. Thomas administrator of the estate of W. R. Thomas, deceased.

Appellants contend (1) that the trial judge was divested, by James H. Thomas' affidavit of prejudice, of jurisdiction to make the order appointing the general administrator; and (2) that the court erred in appointing a stranger as administrator against the wishes of seven of the decedent's eight children, five of whom claimed to be qualified and willing to act.

The facts are as follows:

W. R. Thomas, of Kittitas county, who died March 27, 1931, left surviving him eight children: The five above-named appellants, respondent Wilburn Thomas, Margie Davies, and Harry Thomas, all residing in this state. The decedent's non-intervention will was admitted to probate March 30, 1931, on the petition of Philip Lawrence, who was the executor nominated by the decedent. In June, 1931, the will was adjudged invalid in an action instituted by Wilburn Thomas. That cause was tried to the court for Kittitas county, Honorable John A. Frater, judge of the superior court for King county, sitting for the local judge.

On June 16, 1931, Howard Thomas filed a petition for appointment as administrator of his deceased father's estate. Wilburn Thomas timely filed a petition protesting against such appointment, alleging Howard Thomas was not qualified to act as administrator:

"That this protestant contested the purported will of said W. R. Thomas and the Honorable John A. Frater, the judge before whom the contest was heard, has announced his decision setting aside the will; and that during said contest great bitterness was shown

by the said petitioner against this protestant; and should this petitioner be appointed as administrator of said estate, because of the bitterness and ill-feeling existing in said family there would be continued litigation resulting in the unnecessary waste of a large portion of the estate.''

Wilburn Thomas prayed that he or some qualified, disinterested person (he suggested the names of five men) be appointed administrator.

The appellants protested against the appointment of Wilburn Thomas or any of the five persons suggested, and again petitioned the court to appoint Howard Thomas as administrator of the estate, but

''. . . if for any reason this court shall not consider said Howard Thomas qualified or shall not desire to appoint him, then and in that event one of the undersigned [appellants] that the court considers most competent and best fitted to act, be appointed administrator or administratrix.''

At the conclusion of the hearing upon the petition of Howard Thomas for appointment as administrator, the court (Honorable John A. Frater), on its own motion, announced that L. R. Thomas, who is not related to any of the parties, would be appointed administrator. The court said:

''I feel this way about it, like I indicated at the close of the hearing on the will contest. It is unfortunate that the heirs have to quarrel over the estate, but that is neither here nor there; they have, and I suppose we will have to go all through with this controversy. I find the names of five gentlemen suggested by the protestant . . .; All but one of the heirs suggest Howard Thomas. As indicated some time ago, I don't know any of these people, and I want to be impartial about it; I think the best thing, for the best interests of the estate and everybody connected with it, all of the heirs (the five who suggest the appointment of Howard Thomas, and Wilburn Thomas, who

is protesting), I think it is better to have an impartial administrator, who is not an heir of the estate and in no wise connected with this litigation, and for aught that I know, at least, in no wise connected with the water right litigation, and who will employ an attorney that is not an attorney for either the protestants to the will or to any of the heirs, so therefore to have this matter ended . . . I will name Bob (L. R.) Thomas, of the William Smithson Company, as administrator, and fix the bond at twenty-five thousand dollars, and name Jay Whitfield as attorney.''

Appellants abandoning their announced purpose— on the basis of which their request for delay was granted—of reviewing the matter in this court, the trial court entered an order appointing L. R. Thomas special administrator of the estate, pending the appointment of a general administrator. Counsel for appellants immediately filed a protest, signed by himself but not verified, alleging that L. R. Thomas was disqualified because of inexperience, etc. Mr. Thomas qualified and entered upon the duties of special administrator.

On July 15, 1931, Wilburn Thomas petitioned the court to appoint L. R. Thomas general administrator of the estate. On request of counsel for appellants, the hearing on the petition was continued from time to time until September 8, 1931. On that date, James Thomas, one of the appellants, asked that the matter be heard before another judge, and filed an affidavit averring that the Honorable John A. Frater was prejudiced against the affiant. On the ground that same was not timely, the application for a change of judge was denied. The court said:

''I think that, although I am loath to do it, I must deny the application for change of venue. Briefly, either this affiant, or his counsel in his behalf, filed an affidavit against the resident judge of Kittitas county.

I was called in and heard the will contest. I heard testimony as to the qualifications of different people for the appointment of general administrator. At that time, James Thomas and his brothers and the counsel urged the appointment of one of the Thomas brothers for the appointment of general administrator. Counsel who has filed this affidavit, introduced testimony in behalf of that. He later announced his intention to ask for a writ of *certiorari,* later abandoned it, and later, when I indicated that I would come over to hear this matter when the temporary administrator filed his application for appointment of the general administrator, counsel on two different occasions—I think once by wire and once by letter—indicated that the dates fixed were not satisfactory. In a letter one day last week, I was advised that the date was not satisfactory as I fixed it. I do not believe the history of this situation warrants me in granting this affidavit at this time under all the circumstances, and I will therefore deny it."

Counsel for appellants again filed a protest, reiterating charges that L. R. Thomas was disqualified, against the appointment of L. R. Thomas as general administrator. No attempt was made to substantiate the allegations of unfitness of Thomas. Therefore the court appointed L. R. Thomas general administrator, at the same time saying:

"I think, after reading the protest and objection to the petition, as it is called, that the matters and things herein alleged are similar to those already presented before. . . . Mr. L. R. Thomas will be appointed general administrator."

The court entered an order appointing L. R. Thomas administrator of the estate of W. R. Thomas, deceased, it

". . . appearing to the court that L. R. Thomas is legally competent to act as said administrator of said estate, and is totally disinterested and a fit and proper person for such trust."

■ The application for a change of judge was not timely. The affidavit of prejudice was filed four months subsequent to the will contest, which was tried to the Kittitas county superior court, Honorable John A. Frater sitting for the resident judge, against whom counsel, in behalf of appellants, filed an affidavit of prejudice. James Thomas joined in the petition for appointment of Howard Thomas as administrator. He testified at the hearing in behalf of his brother. He joined with the other appellants in protesting against the appointment of Wilburn Thomas. He was a party to each proceeding (all heard by Honorable John A. Frater), and he and the other appellants were represented by present counsel at each stage of this controversy. By the order of June 29, 1931, the court refused to appoint as administrator any of the decedent's children.

At no stage of the proceedings did appellants' counsel or any of the appellants object to submitting to the jurisdiction of the court. On the contrary, the appellants filed petitions and protests, participated in hearings thereon, and thereby invoked the exercise of judicial discretion a number of times, long prior to the application for a change of judge. The rulings made involved discretion. An application for a change of venue or of judge must be made at the party's first appearance in the cause before a ruling involving discretion.

"In the case of *State ex rel. Mead v. Superior Court,* 108 Wash. 636, 185 Pac. 628, this court held that, while the application for a change of venue, when timely made, must be granted as matter of right, the timeliness of the application is to be decided by the status of the proceeding at the time the application was made, and that the party desiring the change must make the application at his first appearance in the cause, before the judge presiding has made an order or a ruling in-

volving discretion. . . . having chosen to submit his petition to respondent, cannot, at a later stage of the proceeding, demand a hearing before another judge upon the ground of supposed prejudice on the part of respondent against relator." *State ex rel. Norris v. Reynolds,* 154 Wash. 232, 281 Pac. 998.

■ Nor was the order denying a change of judge in a "separate proceeding," as appellants contend. The order related to the same subject matter, the estate of the deceased.

"While the order may have been entered in a so-called separate proceeding from the other, yet it related to the same subject-matter, viz., the estate of the deceased, and was in effect an order made after judgment which affected a substantial right of relator, since it authorized a distribution of the estate notwithstanding the appeal. While the proceedings may have been separately docketed, yet they should be considered as one, having in view the one end, viz., the settlement and distribution of the estate of the deceased." *State ex rel. Richardson v. Superior Court,* 28 Wash. 677, 69 Pac. 375.

■ Did the court err in appointing a stranger administrator of the estate of the decedent?

The five appellants requested the appointment of Howard Thomas as administrator. It is argued that, as the court made a finding of disqualification only as to Howard Thomas, one of the other four appellants should be appointed administrator; that the provisions of the statute (Rem. Comp. Stat., § 1431) are mandatory, and require the appointment of one of the qualified children.

Ordinarily, letters of administration should be granted to the next of kin, the children in the case at bar. However, where the next of kin are not able to agree upon an administrator, or where (as in the case at bar) the ill-feeling existing between those eligible

for appointment would be conducive of continuous litigation with resultant loss to the estate, then the court may appoint any suitable person to administer the decedent's estate. That is, under the facts of the case at bar, the statute (Rem. Comp. Stat., § 1431) prescribing the order in which persons are entitled to administer an estate, is not mandatory, and does not prevent the appointment of a stranger as administrator.

"In a broad sense, the representative of a decedent holds the estate as a trust fund for the payment of the debts of the decedent, for the reason that the rights of creditors are preferred over those of heirs, devisees and legatees. Nevertheless, he also has in his charge the interests of the heirs, devisees and legatees. 'He occupies the position of trustee for the persons beneficially interested in the estate.' 11 R. C. L., p. 23, § 6. The relation is such that he who serves as administrator should be one who can act impartially, and in those jurisdictions such as this where the court is not bound by mandatory statutory provisions on the subject of preference right of appointment, nor by enumerated causes of disqualification to act, no one should be appointed who is hostile to the observance of and respect for the rule that the purpose of administration is to both collect and preserve the estate and impartially assist in passing it to those beneficially interested according to the priority of their rights. It is as much the duty of an administrator to act diligently in uncovering and gathering property that belongs to the estate as it is to assist in the proper disposition of property the title and possession of which are in the estate without dispute." *In re Stotts' Estate,* 133 Wash. 100, 233 Pac. 280.

That it was to the best interests of the estate to appoint a stranger as administrator, clearly appears from an examination of the record. The appointment of any one of the children as administrator would result in litigation and defeat the very purpose of ad-

ministration, which is to preserve the estate and cause it to pass to the heirs and distributees without waste or loss, and without undue delay.

L. R. Thomas acted as special administrator for three months prior to his appointment as general administrator. That was ample time in which to demonstrate he was qualified to administer the estate. The trial court was convinced, as are we, that he is a disinterested and a fit and proper person to administer the estate of W. R. Thomas, deceased.

We have considered the other assignments of error, which we find are without substantial merit.

The order is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and BEALS, JJ., concur.