[1] Reported in 140 P.2d 560.
Bertha White filed in this court her petition for a writ of certiorari to review an order of the superior court for King county discharging certain proceedings instituted by the petitioner in a probate matter pending in that court. Upon the filing of the petition here, the chief justice issued an order directing the superior court and the administrator in the pending probate matter, as respondents, to show cause why the prayer of the petition should not be granted. The respondents appeared in response to the petition and made full return to the order to show cause. Petitioner moved to strike certain portions of the return and at the same time made answer thereto admitting certain allegations thereof and denying generally the remainder. The cause was then argued and submitted for decision upon all its phases.
The history of this case, as shown by the record before *Page 826 
us, is as follows: E.C. Million, whose estate is here involved, died in Seattle on April 8, 1932, leaving a nonintervention will in which an executor was nominated to act without bond. The will was admitted to probate and the named executor duly appointed on April 14, 1932. On November 6, 1933, a decree of solvency was entered in that proceeding.
The executor failed and neglected to administer the estate properly, and after a lapse of eight years petitioner herein, the principal creditor of the estate, and another creditor, a corporation, on or about March 7, 1940, filed their petitions in the probate cause asking that the executor be removed for malfeasance and nonfeasance in office. After a hearing upon those petitions, the executor resigned, and on June 26, 1940, the court entered an order finding that the executor had wrongfully neglected the interests of the estate, adjudging the estate to be insolvent, accepting the executor's resignation, and directing him to make full and final report of his administration.
July 23, 1940, respondent James A. Laughlin was appointed and qualified as administrator of the Million estate, with the will annexed, giving bond in the sum of five thousand dollars. He has acted in that capacity ever since.
On or about October 19, 1940, the final account of the former executor was settled, showing money of the estate in his hands amounting to $954.56, which was paid over to the administrator. On the same day, the administrator verified and filed his first report showing the condition of the estate. The report set forth an inventory of the estate property consisting of (1) nine parcels of real estate located in King, Kitsap, Skagit, and Snohomish counties; (2) various securities, the principal items of which were fourteen shares of capital stock of Highland Timber Company and twenty-two shares of capital stock of Skagit Mill Company, the two companies being allied corporations; and (3) cash *Page 827 
amounting to $6,724.56, of which $4,480 represented recently received dividends from Highland Timber Company. The report also showed delinquent taxes and assessments against the real properties in the amount of $1,005.73. Other matters were therein set forth, upon which the administrator sought instructions from the court.
April 23, 1941, the administrator filed in verified form his second report, showing total receipts to that date of $12,709.36, with possible additional receipts to be realized before hearing on the report, and expenditures amounting to $2,020.14, leaving a balance on hand of $10,689.22. The report also listed eleven approved claims against the estate totalling $36,703.70, inclusive of interest to April 22nd; of these, petitioner's claim was by far the largest, amounting to $21,503.40, including interest. The report further advised the court that the administrator had received two bids for the twenty-two shares of capital stock of Skagit Mill Company, the highest of which bids was for three thousand dollars, but that the administrator, deeming the bids disproportionate to the true value of the stock, had rejected both bids. The report concluded with a request for permission to make partial distribution of the cash on hand to the creditors. Upon a hearing before the court, the report was approved on May 6, 1941, with direction to the administrator to make a partial distribution to the extent of twelve thousand dollars upon the eleven claims referred to above. The administrator and his attorney were each allowed a fee of seven hundred fifty dollars. The distribution was made as ordered, and petitioner received her just proportion of the amount distributed.
April 1, 1942, the administrator filed his third verified report, showing the then condition of the estate. That report showed total receipts to date thereof amounting to $23,174.97 and disbursements totalling $15,698.94, leaving a balance of $7,476.03 cash then *Page 828 
on hand. The report further recited that the principal remaining assets of the estate were the fourteen shares of capital stock of Highland Timber Company and the twenty-two shares of capital stock of Skagit Mill Company; that both of those companies were then in process of liquidation, but periodically had paid the administrator substantial liquidating dividends; that the administrator had endeavored to sell the thirty-six shares of stock but not having received any fair offer therefor was unwilling to sacrifice them by sale at a price unduly below their true value.
Thereafter, nothing of moment occurred until March 5, 1943, when petitioner herein filed in the pending probate cause a petition for a special allowance of $2,345.50, as a preferred claim, for services alleged to have been rendered and expenses claimed to have been incurred by petitioner in effecting the removal of the former executor in June, 1940, and in uncovering assets belonging to the estate. On April 1, 1943, Mary Egan Finley, holder of an approved general claim amounting to $4,861.11 against the estate, filed an answer and objections to the petition, alleging that she herself and her attorneys had participated with the petitioner in effecting the results claimed by the latter and that, in any event, the final order entered by the court upon former proceedings involving the matters set forth in the petition for special allowance was res judicata of all such matters, including petitioner's alleged preferred claim.
The next step in the chain of events presents the matrix of this controversy. On May 10, 1943, petitioner procured from the superior court an ex parte order directing the administrator (1) to be in court on May 21, 1943, (2) to file his report as administrator and his answer to the petition for special allowance, or (3) to show cause why he should not be ordered (a) to comply with the foregoing commands, (b) to apply the money in his hands to the payment of the *Page 829 
claims against the estate, and (c) to file a final report and petition for final settlement and distribution of the estate.
Prior to the return day fixed by the order to show cause, the administrator on May 18, 1943, filed a verified report showing a balance of cash then on hand amounting to $11,741.31. The report further showed that the principal unsold assets of the estate yet remaining were the thirty-six shares of capital stock of the two corporations previously mentioned; that these two corporations were still in process of liquidation and that arrangements had been made for the sale of the remainder of their assets; that, during such liquidating period since December 30, 1942, the administrator had received as liquidating dividends from those companies the sum of $4,084, which sum was included in the amount of cash then in the hands of the administrator; that the administrator hoped to receive a final dividend from those corporations in the near future; that the administrator had filed fiduciary income tax returns for the calendar years 1940, 1941, and 1942, accompanied by a request that the United States treasury department audit such returns and determine the amount of taxes due; that the 1940 and 1941 returns had been audited and the amount of taxes shown to be owing paid; that, while the 1942 return filed by the administrator did not show any tax due, nevertheless, on the basis of previous experience, it was reasonable to expect that an additional assessment would be made by the treasury department.
On the same day, May 18, 1943, the administrator also filed an answer to the petition for special allowance, denying generally the material allegations of the petition. On the following day, petitioner filed a motion to strike the answer and for an order directing the administrator forthwith to file a proper amended answer. So far as the record discloses, however, petitioner *Page 830 
filed no objections to the administrator's report of May 18th, summarized above.
On the return day, May 21, 1943, the cause came on for hearing on (1) the order to show cause issued on May 10th, (2) the administrator's answer to the petition for special allowance, (3) petitioner's motion to strike the answer, and (4) the report of the administrator filed May 18th.
After argument by counsel, but without taking further evidence, the court concluded that the administrator's answer and report were both sufficient and that the administrator should not be required "at this time" to make partial distribution of the funds on hand, until the collector of internal revenue should have determined whether or not any income tax was due and owing from the estate for the year 1942. The court thereupon entered an order denying petitioner's motion to strike the administrator's answer and, further, discharging without prejudice the order to show cause. The petition for writ of certiorari filed in this court seeks a review of that order.
Petitioner assigns error on the part of the superior court (1) in entering the order discharging the order to show cause; (2) in holding that the administrator's report of May 18, 1943, shows sufficient grounds for withholding distribution of the funds on hand until the collector of internal revenue shall have determined whether or not any income tax for the year 1942 is due from the estate to the United States; (3) in refusing to order the administrator to distribute any portion of the cash on hand without further delay; and (4) in refusing to order the administrator to file a "full" report. Petitioner discusses these four assignments of error under two heads: (1) Insufficiency of the facts stated in the report to warrant refusal of petitioner's demand for immediate distribution of the funds; and (2) failure of the report to set forth in detail the nature, description, and value of all the assets *Page 831 
of the estate. We shall consider these two headings in inverse order.
[1-3] With respect to the contention that the report is not full and complete, there are, in our opinion, several sufficient answers: First, so far as the record discloses, petitioner at no time moved or asked that the report be made more definite, specific, or detailed, but went to hearing upon the report as presented. This alone should dispose of that contention. Second, it is plain from the contents of the record that the petitioner knew as much about the various assets of the estate, their description, nature, and value, as did the administrator, for she and her attorney had taken a direct, active, and continuous interest in uncovering all the assets of whatsoever kind and wheresoever situate; she therefore was not lacking in knowledge, or means of information, concerning all details with reference to the assets. Third, the order discharging the show cause order was not a permanent, irremediable disposition of the entire matter, but was made "without prejudice," so that the petitioner may still demand a fuller and more complete report, should the situation warrant it. Fourth, in our opinion, the report as made was, in respect of details, a sufficient compliance with the order to show cause, in response to which the report was filed.
The report of May 18th did not purport to be a final report, nor was it accompanied by a petition for final settlement of account and distribution of assets. It was simply a report of the administrator's activities, receipts, and disbursements subsequent to the preceding report. As already shown above, the administrator during his connection with the estate filed four successive reports which, taken together, fully advised the court and all parties interested in the matter as to the affairs of the estate, the progress of the administration, and the activities of the administrator. It will be recalled that the administrator's first report, filed October 19, 1940, described the general nature and *Page 832 
condition of the estate, set forth an inventory of its real properties and other assets, and requested certain instructions from the court for the guidance of the administrator. The succeeding reports supplemented the original report and in like manner advised the court of the progress of the administration, the affairs of the estate, the condition of the assets, and the relative value of its properties. These reports, we think, constituted sufficient compliance with Rem. Rev. Stat., § 1529 [P.C. § 9791], which provides:
"Within thirty days after the expiration of the time for filing of claims of creditors, the executor or administrator shall make, verify by his oath, and file with the clerk of the court a report of the affairs of the estate. Such report shall contain a statement of the claims filed and allowed and all those rejected, and if it be necessary to sell or mortgage any property for the purpose of paying debts or settling any obligations against the estate or expenses of administration or allowance to the family, he may in such report set out the facts showing such necessity and ask for such sale or mortgage; such report shall likewise state the amount of property, real and personal, which has come into his hands, and give a detailed statement of all sums collected by him, and of all sums paid out, and it shall state such other things and matters as may be proper or necessary to give the court full information regarding any transactions by him done or which should be done. Such executor or administrator may, however, make, verify, and file, prior to the expiration of the time for the presentation of claims, any reports which in his judgment would be proper or which the court may order to be made."
It must be presumed, in the absence of any showing to the contrary, that a formal inventory of the estate was filed and an appraisement of the property made, as required by Rem. Rev. Stat. (Sup.), § 1465 [P.C. § 7029n-45].
For the reasons hereinbefore given, we conclude that petitioner's contention with reference to the adequacy of the report is without merit. *Page 833 
Petitioner's main contention and assignment of error relate to the refusal of the court to order an immediate partial distribution of the cash on hand and its refusal to direct the administrator to file his final report and petition for distribution of all remaining assets.
Reverting to the succession of events narrated above, we find this situation facing the superior court with respect to the affairs of the estate at the time of the hearing on May 21, 1943: The principal assets of the estate remaining undisposed of at that time were the thirty-six shares of capital stock of two corporations then in process of liquidation. The final liquidating dividend was expected within a very short time. According to the various reports filed by the administrator, previous liquidating dividends paid by those corporations to the estate amounted to $15,414.
As shown in the respondents' return herein, a question had arisen as to the taxability of these dividends considered as income to the estate. While the auditor of the two corporations regarded these dividends as taxable only to the extent of approximately one per cent, the agents of the internal revenue department were contending that the dividends were taxable to the extent of 55.11%. The taxes on those dividends had been adjusted for the years 1940 and 1941, but the 1942 tax had not yet been fully determined and settled. There was a possibility at least of a further tax liability. The administrator was under a five thousand dollar bond and his only protection was the amount of money still in his possession.
[4] Moreover, many of the assets had been sold by the administrator, and a former partial distribution had been made pursuant to interim reports and orders. These were subject, however, to subsequent examination and modification on the final hearing. In re Deming, 192 Wn. 190, 203, 73 P.2d 764, 772;In re Krueger's Estate, 11 Wn.2d 329, 350, 119 P.2d 312, *Page 834 
322; In re Peterson's Estate, 12 Wn.2d 686, 716,123 P.2d 733, 748.
Furthermore, the matter of the preferred claim of the petitioner for special allowance in the sum of $2,345.50 was still pending and undetermined. The next largest creditor was resisting its allowance, and the administrator had denied its validity.
Lastly, it appeared to the superior court that it was a matter of but a relatively short time until the estate could be finally settled, after final report, and a final decree of distribution then be entered. It is also to be noted that, by its order discharging the order to show cause, the superior court did not summarily and permanently dispose of the issues then before it, but merely decided that the administrator should not be required"at this time" to make partial distribution of the funds on hand.
[5] It is undoubtedly true that it is the duty of every executor or administrator to settle the estate in his hands as rapidly as possible, without sacrifice to the estate. Rem. Rev. Stat., § 1517, specifically so provides. The record in this case does not show any breach of that statutory duty. On the contraryl it appears to us not only that the present administrator has conducted the affairs of the estate diligently and faithfully, but also that he has proceeded with the liquidation as speedily as the interests of creditors, claimants, heirs, and his own responsibilities would require and permit.
It is significant that, while, by the probate code (Rem. Rev. Stat., §§ 1551 to 1556 [P.C. §§ 9817-9822]), heirs, legatees, or devisees may apply for a premature distribution of the estate, no such statutory right is conferred upon creditors. In cases of heirs, legatees, and devisees, however, there are a number of safeguards provided, such as the exaction of a bond, notice to all parties interested therein, and payment of costs by the applicant. No such statutory safeguards exist *Page 835 
for the protection of anyone against premature distribution to creditors. Only on the final account and settlement by the administrator are all interested parties required to come forward and make their objections and, conversely, only by the final decree are all such parties precluded from making further claim upon the administrator.
[6] Petitioner lays great stress upon the fact that in the order now under review the superior court categorically postponed any distribution of funds until the collector of internal revenue shall have determined whether or not any income tax for the year 1942 is due and owing from the estate to the United States. Her contention then is that the possible liability for any such tax is too chimerical to warrant consideration, and to do so would in effect leave petitioner without any remedy for the recovery of her just proportion of the assets.
We do not believe that the court postponed distribution for that reason alone, but rather because of all the above stated undetermined matters taken together. Nor do we believe that the administrator's anxiety with respect to the possible liability for income tax is wholly groundless. In any event, should the length of delay prove to be unreasonable, or the amount of possible tax shown to be inconsequential, the petitioner may always renew her request for distribution, whether partial or full, and the court may upon a proper showing grant all interested parties adequate relief.
[7] Within the limits of the provisions of the probate code, an executor or administrator must be allowed a certain amount of discretion in his management of the affairs of an estate. Likewise, and even to a greater extent, the probate court is entitled to exercise its discretion in supervising and directing administrative officers in their conduct of such affairs. We fail to perceive, in this instance, any abuse of discretion *Page 836 
either by the administrator in refusing to make a partial distribution at this time or by the court in refusing to order him to do so.
The order of the superior court discharging its prior order to show cause will be affirmed.
MILLARD, JEFFERS, MALLERY, and GRADY, JJ., concur.