[No. 73951-0. En Banc.]
Argued February 12, 2004. Decided July 1, 2004.

*In the Matter of the Estate of* MARCELLA LOUISE JONES.

JEFFREY P. JONES, ET AL., *Petitioners*, v. RUSSELL
K. JONES, *Respondent*.

4

*Frank J. Gebhardt* and *Robert F. Greer II* (of *Feltman Gebhardt Greer Zeimantz, P.S.*), for petitioners.

*Philip A. Talmadge* (of *Talmadge Law Group, P.L.L.C.*), for respondent.

*Michael L. Cohen, Michael B. King, Gail E. Mautner, June A. Jackson, David W. Savage,* and *J. Richard Manning* on behalf of the Washington State Bar Association, amicus curiae.

OWENS, J. — The Spokane County Superior Court removed Russell Jones, a beneficiary and the personal representative of Marcella Jones's estate, from his position based on several breaches of fiduciary duty to the remaining beneficiaries, his three brothers. The appellate court reinstated him as the personal representative holding the trial court lacked the specific legal grounds for his removal listed in RCW 11.68.070 and 11.28.250. We construe RCW 11-.68.070 and 11.28.250 to hold all personal representatives to the same fiduciary duty. Under RCW 11.68.070, *all* of the grounds listed in RCW 11.28.250 are incorporated into the nonintervention statutory scheme. Probate courts may remove a personal representative or restrict his or her nonintervention powers for waste, embezzlement, mismanagement, fraud, or "for any other cause or reason which to the court appears necessary." RCW 11.28.250. Based on this statutory construction, we find Russell breached his fiduciary duty to the beneficiaries, and we affirm the trial court's removal of Russell. We also affirm the appointment of James Woodard as a successor personal representative, remand for a final accounting, and award attorney fees to Peter and Jeffrey Jones.

## FACTS

Marcella Louise Jones died testate September 2, 1995, with property in Spokane, Washington. Marcella's will

transferred her estate in equal shares to her four sons, David, Russell, Jeffrey, and Peter, and named Russell the personal representative with nonintervention powers. The will was admitted to probate on September 25, 1995, Russell was appointed the personal representative, and an order of probate and solvency was entered. The estate included real estate in Spokane, securities and investments, an interest in a mortgage/real estate contract, personal property, and a 1987 Buick automobile. Although the brothers met on May 4, 1996, to distribute property, the meeting was unsuccessful due to continuing unresolved conflicts between the brothers that have endured over the last 40-50 years.

Subsequently, Peter and Jeffrey filed several petitions during the probate proceedings to receive an interim accounting, a final accounting, remove Russell as personal representative, and appoint a new personal representative. Peter and Jeffrey also filed a personal complaint against Russell based on several breaches of his fiduciary duty. The actions were consolidated and on September 4, 2001, Judge Rebecca Baker heard Peter and Jeffrey's complaints. Judge Baker found that Russell had breached several of his fiduciary duties as a personal representative. She subsequently removed Russell and appointed James Woodard as his successor. Judge Baker further concluded that the unrecorded deed transferring the house to Russell was void and that he should pay rent, utilities, insurance, and property taxes based on his residence in the estate property from the time of his mother's death until the present. Finally, Judge Baker ordered a final accounting and awarded attorney fees to Peter and Jeffrey, both to be paid by Russell.

On November 5, 2001, Russell appealed the trial court's decision. The Court of Appeals reversed the trial court and held that the trial court did not have jurisdiction to intervene in the probate proceeding because the alleged misconduct was insufficient to disqualify Russell under RCW

11.68.070 and 11.28.250. *In re Estate of Jones*, 116 Wn. App. 353, 358, 67 P.3d 1113 (2003). Peter and Jeffrey petitioned this court for review and we granted it on November 4, 2003. We now reverse the appellate court and affirm the trial court's ruling.

## ISSUES

1. Under RCW 11.68.070 and 11.28.250, did the trial court have grounds to properly remove Russell Jones as the nonintervention personal representative of Marcella Jones's estate?

2. If removal was proper, did the trial court properly appoint James Woodard as the new personal representative?

3. Should either party receive attorney fees?

## STANDARD OF REVIEW

On review, unchallenged findings of fact are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). An appellate court will uphold challenged findings of fact and treat the findings as verities on appeal if the findings are supported by substantial evidence. *Miller v. City of Tacoma*, 138 Wn.2d 318, 323, 979 P.2d 429 (1999). Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding. *Id.* Where the findings do not support the removal of a personal representative, the removal is arbitrary and improper. *In re Estate of Coates*, 55 Wn.2d 250, 259-60, 347 P.2d 875 (1959) (finding that the court lacked jurisdiction to remove a personal representative where the evidence did not support his unfaithful conduct); *In re Estate of Ardell*, 96 Wn. App. 708, 720, 980 P.2d 771 (1999).[1] An appellate court reviews conclusions of law and questions of statutory

---

[1] Like *Coates*, several cases in this opinion referring to removal of a personal representative predate the current versions of RCW 11.68.070 and 11.28.250. However, these cases, dating back to 1916, remain applicable because the principle of removing a personal representative for unfaithful conduct or other

interpretation de novo, as these are questions of law. *Bishop v. Miche;* 137 Wn.2d 518, 523, 973 P.2d 465 (1999); *State v. J.P.,* 149 Wn.2d 444, 449, 69 P.3d 318 (2003).

## ANALYSIS

### A. Removal

 The superior court properly removed Russell Jones because the court had jurisdiction over the proceeding and the grounds for removal were valid. Superior court jurisdiction over nonintervention probate is statutorily limited. *In re Estate of Bobbitt,* 60 Wn. App. 630, 632, 806 P.2d 254 (1991). As the court explained in *Coates,* once the decedent dies, the personal representative applies for an order of solvency, and the court has jurisdiction to grant or deny the order. However, once an order of solvency is entered the court loses jurisdiction. The court may regain jurisdiction only if the executor or another person with statutorily conferred authority invokes jurisdiction. *Coates,* 55 Wn.2d at 255-56 (citing *In re Estate of Peabody,* 169 Wash. 65, 13 P.2d 431 (1932)). Here, an order of solvency was granted, and Russell did not invoke the superior court's jurisdiction. However, under RCW 11.68.070, Peter and Jeffrey, as heirs of the estate, had the statutory authority to invoke jurisdiction and properly did so. Therefore, the superior court had the jurisdiction to decide if Russell faithfully discharged his duties pursuant to RCW 11.68.070 and 11.28.250.

 If the personal representative "has not faithfully discharged said trust or is subject to removal for any reason specified in 11.28.250," RCW 11.68.070 allows the court to intervene and to remove or restrict the powers of a nonintervention personal representative. RCW 11.28.250 provides:

---

grounds has remained constant since at least 1915. *See* REM. 1915 CODE §§ 1415, 1416, 1444.

Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, *or for any other cause or reason which to the court appears necessary,* it shall have power and authority, after notice and hearing to revoke such letters.

(Emphasis added.) The superior court must have valid grounds for removal and these grounds must be supported in the record. *In re Estate of Beard,* 60 Wn.2d 127, 132, 372 P.2d 530 (1962); *In re Estate of Aaberg,* 25 Wn. App. 336, 339, 607 P.2d 1227 (1980). Further, if even one ground for removal is valid, the decision should be upheld on appeal. *Beard,* 60 Wn.2d at 134-35; *Aaberg,* 25 Wn. App. at 339.[2]

### 1. Statutory Interpretation of RCW 11.68.070 and 11.28.250

The appellate court held that the superior court did not base its removal of Russell Jones on valid grounds. *Jones,* 116 Wn. App. at 358. One basis for the appellate court's holding was a narrow construction of RCW 11.68.070 and 11.28.250. It held that RCW 11.28.250's catchall phrase "for any other cause or reason which to the court appears necessary" could not be incorporated into RCW 11.68.070 because that statute allows removal only for unfaithful conduct or "reasons *specified* in RCW 11.28.250." *Id.* at 363.

---

[2] Although *Beard* is not a nonintervention will case, it is still valid authority for the principles cited. A court must have valid grounds to remove any kind of personal representative. Without such grounds, removal would constitute an abuse of discretion. Further, we have held many times that "where a judgment or order is correct, it will not be reversed merely because the trial court gave the wrong reason for its rendition." *Ertman v. City of Olympia,* 95 Wn.2d 105, 107-08, 621 P.2d 724 (1980). From this premise, the reasoning in *Beard* is correct: if one of the trial court's grounds is valid, then the other grounds are surplusage and removal must be upheld even if the other reasons are invalid. Further, based on the statement in *Ertman,* even if the trial court's grounds were not valid, if the appellate court finds grounds for removal supported by the findings, the personal representative may still be removed.

The court concluded that the catchall phrase was not a "reason specified" and therefore could not be a basis for removal of a nonintervention personal representative. *Id.* The court then found that Russell's actions did not constitute specified grounds listed in the statutes and his removal was improper. *Id.* at 364, 372.

The appellate court's statutory interpretation is contrary to the rules of statutory construction. Where a statute is unambiguous, the court assumes the legislature means what it says and will not engage in statutory construction past the plain meaning of the words. *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963-64, 977 P.2d 554 (1999). RCW 11.68.070 is not ambiguous and plainly incorporates all of the reasons for removal listed in RCW 11.28.250 into the nonintervention statutory scheme. A plain reading of both statutes shows that the purpose of the statutes is to provide protection to beneficiaries and other interested parties when a personal representative breaches his fiduciary duties. To exclude nonintervention personal representatives from the "for any other cause" provision would allow those personal representatives greater discretion and more leeway for misconduct than other personal representatives.

Further, the catchall phrase does not mean that the court may remove a representative on a whim. The rule of ejusdem generis states that when general terms are in a sequence with specific terms, the general term is restricted to items similar to the specific terms. *Dean v. McFarland*, 81 Wn.2d 215, 221, 500 P.2d 1244 (1972). Therefore, the court may remove a personal representative under the "for any other cause" provision only if the conduct is similar to the other grounds listed in the statute. In light of the rules of statutory construction, we reverse the appellate court and hold that RCW 11.68.070 fully incorporates RCW 11.28.250 into the nonintervention statutory scheme.

### 2. Grounds for Removal

The trial court's removal of Russell Jones as a personal representative was based on several breaches of fiduciary

duty. These breaches included using estate property for personal use, commingling estate funds, and refusing to disclose information to the beneficiaries.

### a. The Estate House

It is undisputed that Russell lived in the estate property and practiced law from the house from the mid-1980s until the time of trial, rent free. On September 20, 1996, about one year after his mother's death, Russell deeded himself the property but did not record the deed. At that time, there was no agreement between the four brothers that Russell would take the property as his distributive share or live in the house rent free during probate. Peter Jones even offered to buy the house in May and September of 1996. The trial court found that Russell breached his fiduciary duty by distributing the house to himself and by failing to pay rent, utilities, property taxes, and insurance while residing in the house. Clerk's Papers (CP) at 105-06, Conclusions of Law 8, 11-13. We disagree that distribution of the house alone breached a fiduciary duty but find that Russell breached his fiduciary duty by possessing the house in an individual capacity before the estate was closed. We also find that Russell breached his fiduciary duty by failing to use the fair market value of the house during distribution and by failing to pay rent, utilities, property taxes, and insurance while residing in the house.

Under RCW 11.04.250, the title to land vests to devisees at the time of the devisor's death. Therefore, title to the estate land vested equally to Russell, Peter, Jeffrey, and David in September 1995. Russell, as a nonintervention personal representative, possessed the same powers as a trustee and could distribute the land "in satisfaction of *any* partition or distribution, in kind, in money or both." RCW 11.98.070(15) (emphasis added); former RCW 11.68.090 (1988);[3] *see also In re Estate of Ehlers*, 80 Wn. App. 751,

---

[3] RCW 11.68.090 was amended in 1997, but the amendment affected only estates of decedents dying after December 31, 1997. LAWS OF 1997, ch. 252, § 66;

761-62, 911 P.2d 1017 (1996). Therefore, Russell could distribute the property to himself in satisfaction of his one-fourth share of the estate.

However, Russell breached his fiduciary duty by failing to use the fair market value of the house and offset his distribution by the amount in excess of his one-fourth share. The trial court found that the house was worth $159,000 ($162,000 less $3,000 to replace the furnace). CP at 103, Finding of Fact 38; CP at 106, Conclusion of Law 14. This value was supported by the record. Kirk Davis, a real estate appraiser, appraised the house at $162,000, which included repairs and defects in the structure.[4] Russell valued the house at approximately $126,000. Although Russell had received an appraisal in November 1995 valuing the house at $155,000, Russell used the value of $120,900[5] and then added $5,000 as a cushion against "attacks" to reach the $126,000 value.[6]

---

Laws of 1998, ch. 292, § 205. Therefore the pre-1997 version will be referred to in this case. Further, it should be noted that in several instances where former statutes are used, they were amended in 1997. RCW 11.98.070 was amended in 1997 and 2002, but the amendments did not change the cited section. Laws of 1997, ch. 252, § 75; Laws of 2002, ch. 66, § 1.

[4] Although the appraisal was done in 2001, the appraisal value was based on the value of the house in September 1995. 1 Verbatim Report of Proceedings (VRP) at 128.

[5] The trial court properly excluded the property tax assessment, valuing the property at $120,900, as hearsay. 3 VRP at 559-63; see Ex. 129 (not admitted into evidence). Although public records are a statutory exception to the hearsay rule, the record cannot be based on "conclusions involving the exercise of judgment or discretion or the expression of [an] opinion." Steel v. Johnson, 9 Wn.2d 347, 358, 115 P.2d 145 (1941); RCW 5.44.040.

[6] Although the appellate court states that it was error to exclude Russell's repair cost bids because the statements are not hearsay under Rules of Evidence (ER) 801, it is mistaken and ignores the context in which the evidence was offered. Jones, 116 Wn. App. at 368-69. The repair costs were offered in the context of the house's value. 3 VRP at 602. The appellate court incorrectly assumes the costs reflect Russell's good faith regarding the issue of defects in the house. Jones, 116 Wn. App. at 369. However, this is not clear from the record and it seems more likely that the costs were offered to show a decrease in the value of the house. Russell could not offer the repair costs for this purpose, since the statements would then be offered for the truth of the matter asserted (e.g., bid for $80 is offered to show $80 repair is necessary, decreasing the house's value by $80). ER 801. Therefore, the trial court correctly excluded these costs. 4 VRP at 616-17.

Russell further breached his fiduciary duty by using the property as his own before the estate closed and failing to pay rent. Until an estate is closed, the heirs may not treat estate real property as their own. *In re Estate of Peterson*, 12 Wn.2d 686, 734, 123 P.2d 733 (1942). Therefore, until the estate was closed,[7] Russell had the rights of only an executor in the property. An executor is entitled to possess and control estate property during the administration of the estate and has a right to it even against other heirs. RCW 11.48.020; *Bishop v. Locke*, 92 Wash. 90, 92, 158 P. 997 (1916). However, as a general rule, an executor is account-able for his use of the deceased's real property. *In re Estate of Boston*, 80 Wn.2d 70, 72, 491 P.2d 1033 (1971). Where a person's only right to possession of the property arises from his status as executor, he does not have a right to remain on and use the property when there are other reasonable alternatives open (e.g., renting the property). *Id.* If he chooses to use the house for his own benefit he must pay rent. *Id.*; *In re Estate of Hickman*, 41 Wn.2d 519, 526-27, 250 P.2d 524 (1952); *but see In re Estate of Kruse*, 52 Wn.2d 342, 343, 349, 324 P.2d 1088 (1958) (holding that a spouse with a potential homestead right in the property did not have to pay rent during an intestacy probate where the property was not otherwise disposed of by will); *Ryan v. Plath*, 18 Wn.2d 839, 844, 847, 864-65, 140 P.2d 968 (1943) (refusing to allow testimony about rent where an appointed administrator had run an intestate decedent's farm). This is true even where an executor claims to remain on the property to protect it from vandalism and decay. *Boston*, 80 Wn.2d at 72.[8] Because Russell chose to live on the property and used the property for his own personal benefit while

---

[7] The estate is still not closed. Although Russell filed a declaration of completion on December 30, 1998, Peter and Jeffrey filed for a final accounting, which has not been completed. Former RCW 11.68.110 (1990); CP at 209-10.

[8] Russell's arguments that he lived on the property for insurance purposes, did maintenance work, and thought it would be too expensive to store the estate property or hire a house sitter are completely invalidated by *Boston*.

only entitled to an executorship interest, Russell breached his fiduciary duty and owes the estate rent.[9]

The trial court also found that Russell breached his fiduciary duty by having the estate pay for utilities, taxes, and insurance while he inhabited the house. CP at 106, Conclusion of Law 13. It is undisputed that the estate paid for these costs during 1996 and 1997. Although Russell could distribute the property to himself, he could not use the property for his personal use prior to estate closure. Therefore, the trial court properly found Russell responsible for the utilities, taxes, and insurance while he inhabited the house.

### b. Piano and Car

In addition to Russell's misuse of the estate house, the trial court noted that Russell put 17,000 miles on the estate car and found that Russell breached his fiduciary duty by revaluing an estate piano. CP at 100, Finding of Fact 27; CP at 106, Conclusions of Law 15, 16. The record supports Russell's excessive use of the car. However, although Russell's use of the car may constitute personal use of estate property, it appears the car was sold for approximately its fair market value, so waste to the estate did not occur. 3 Verbatim Report of Proceedings (VRP) at 521-27; Ex. 128; CP at 100, Finding of Fact 27 (disputed finding concluding the car was sold for its fair market value).

Regarding the piano, Russell's revaluation of the piano is questionable. Interim reports and orders may be modified on final accounting. *In re Estate of Million*, 18 Wn.2d 824, 833, 140 P.2d 560 (1943). However, the way Russell went about revaluing the piano indicates unfaithfulness to the estate. Russell seeks to revalue the piano at

---

[9] The trial court ordered Russell to pay $900 per month from the time of his mother's death to the time of trial, less offsets. CP at 105, Conclusion of Law 8. The $900 rental value is supported by the record. Although the rental value contemplates full use of the house, and Russell claims to have used only part of the house based on heating problems, as a personal representative it was Russell's duty to keep the house in a tenantable condition. RCW 11.48.020. He cannot now reap any benefits of his negligent conduct in repairing the house.

approximately $15,000 based on expert advice he received from an antique piano restorer and appraiser. It is unclear from the record if this appraiser has even examined the piano. Jeffrey was not aware of any proposals to revalue the piano, sell it and distribute the money, or receive cash instead of the piano. Moreover, the point of allowing modification seems to be fairness to parties without notice of an interim order. *Peterson*, 12 Wn.2d at 716-17 (noting that these orders are subject to modification because they are informal and there is lack of notice to interested parties; parties without notice should be able to challenge the interim reports). Here, the interim value is not being challenged by a party without notice to the value, Russell's new appraisal is questionable, and Jeffrey received no notice of the revaluation.[10]

Standing alone, Russell's actions involving the piano and car are insufficient to remove Russell. However these actions are indicative of his unfaithfulness to the estate. Further, in light of our previous findings regarding Russell's use of the estate house, removal of Russell is still proper.

### c. Commingling, Sale of Securities, and Bank Records

▆▆ ▆▆ The trial court found that Russell Jones breached his fiduciary duty by commingling his personal funds and estate funds. CP at 98, Finding of Fact 12; CP at 105, Conclusion of Law 10. An executor should keep trust funds in a bank account and not commingle them with his own money. *In re Estate of Snyder*, 122 Wash. 65, 68, 209 P. 1074 (1922). However, ultimately, if all funds are accounted for, the executor is not guilty of misconduct and the beneficiaries are not injured. *Id.* Here, there is evidence that

---

[10] The two cases cited explaining modification of interim reporting, *Peterson* and *Million*, technically are not nonintervention will cases. *Peterson*, 12 Wn.2d at 693 (noting decedent died intestate); *Million*, 18 Wn.2d at 826 (noting that the nonintervention personal representative resigned and not stating whether new administrator has nonintervention powers). However, the reasoning behind allowing modification of interim orders (e.g., fairness to the parties without notice) is applicable regardless of the type of will in probate.

several bank accounts were used and that Russell made distributions from his personal account and repaid himself with estate funds. However, a final accounting has not been completed, and if all funds are accounted for at that time, then no breach occurred.

Additionally, the court found discrepancies in the selling of investments and securities, the estate's tax records, and Marcella Jones's personal checking account. CP at 99-100, Findings of Fact 24, 25. Although there is evidence in the record of the discrepancies, there is also evidence that there is a reasonable explanation for the discrepancies. We remand to the trial court for a final accounting to determine whether these discrepancies exist and if all estate funds have been accounted for.

### d. Interim Accounting

Peter and Jeffrey petitioned the court to require Russell to provide estate information and documents before estate closure pursuant to former RCW 11.96.070 (1997).[11] The superior court commissioner ordered Russell to provide the information, but Judge Baker later revised and reversed the order. CP at 161-67, 211-12. However, during trial, Judge Baker found that Russell breached his fiduciary duty by refusing to provide Jeffrey and Peter with financial information, estate records, valuation of the estate, and information relating to estate property during probate. CP at 102, Findings of Fact 32-36; CP at 104-05, Conclusions of Law 4-7. Judge Baker also concluded that Jeffrey and Peter were entitled to an accounting pursuant to former RCW 11.68.110 (1990), which allows a party to petition for an accounting after a personal representative has filed a

---

[11] Former RCW 11.96.070 was repealed by Laws of 1999, ch. 42, § 637. However, Peter and Jeffrey petitioned the court for information in 1998, so this was an appropriate statute to use. Further it should be noted that statutes subsequently enacted, but inapplicable to this case based on the date of decedent's death, afford beneficiaries the same protection as former RCW 11.96.070 and allow a beneficiary to petition the court for an accounting under a nonintervention will. *See* RCW 11.68.065, 11.96A.080, .030; Laws of 1997, ch. 252, §§ 64, 89; Laws of 1998, ch. 292, § 205; Laws of 1999, ch. 42, §§ 104, 301, 703.

declaration of completion. CP at 106, Conclusion of Law 19.[12]

■ ■ Under former RCW 11.96.070(1)(b), a court could require interim reporting as part of the representative's fiduciary duty where, as here, it is equitable to do so in light of the representative's suspicious activities suggesting self-dealing and unfaithfulness to the estate. *See In re Estate of Johnson*, 187 Wash. 552, 554, 60 P.2d 271 (1936) (stating that an administrator acts in a trust capacity and must administer the trust solely in the interest of the beneficiaries). However, here, although Judge Baker should have required an accounting, she did not order such an accounting during the probate. Because Russell was acting in accordance with Judge Baker's court order, Russell's actions do not constitute a fiduciary breach in this case.[13] Nonetheless, this conclusion does not affect the validity of Judge Baker's order to provide a former RCW 11.68.110 accounting, or our conclusion that Russell must be removed, and we remand for a final accounting.

## B. New Personal Representative

■ With the removal of Russell Jones, we affirm the trial court's appointment of James Woodard as the new personal representative of the estate. Under RCW 11-.68.070, if a personal representative is removed, the court has the power to appoint his successor. Former RCW 11.28.280 (1974) states that if the letters of administration are revoked before the settlement of an estate, the letters shall be granted "to those to whom administration would have been granted if the original letters had not been obtained, or the person obtaining them had renounced

---

[12] *See supra* note 7.

[13] The court also found that Russell's refusal to provide complete information violated discovery rules. CP at 105, Conclusion of Law 9. The record supports Russell's failure to provide complete responses. This violation is indicative of Russell's lack of fiduciary duty to Peter and Jeffrey. However, we need not decide if this violation, standing alone, would be a basis to remove Russell, in light of our previous findings regarding Russell's use of estate property.

administration." The successor personal representative may then administer the estate with nonintervention powers subject to objections by certain persons. Former RCW 11.68.060 (1977).

Here, if Russell had not been appointed as the personal representative, David would have been appointed, as he was the alternative personal representative named in the will. *See* RCW 11.28.010 (stating that if a personal representative becomes disqualified, "the letters shall be granted to the other persons appointed therein"); *see also* RCW 11.28.120 (listing the order of preference for appointment if representatives named in a will are unable to serve).

However, any person interested in a will may object to the granting of testamentary letters to the persons named as executors. RCW 11.28.020. Moreover, the right of beneficiaries to have an estate distributed by law is a primary right, and if a particular person serving as a personal representative may interfere with this right, that person should not be appointed. *In re Estate of Langill*, 117 Wash. 268, 270, 201 P. 28 (1921). It is the court's job to guard against waste or loss to the estate. *Id.* at 269. Therefore, where a conflict of interest exists which would contravene the rights of the beneficiaries and result in waste of the estate, a potential representative should be disqualified. *See In re Estate of Thomas*, 167 Wash. 127, 133-34, 8 P.2d 963 (1932) (holding that where ill will exists which would result in more litigation the court may appoint any suitable person even if that person is outside of the family); *In re Estate of Rohrback*, 152 Or. App. 68, 72, 74, 952 P.2d 87 (1998) (holding that where a conflict of interest exists, a person may be removed as a personal representative); *Genins v. Boyd*, 166 Ga. App. 843, 844, 305 S.E.2d 391 (1983) (holding that where a conflict of interest exists, a person may not be appointed as a personal representative).[14]

---

[14] In *Langill*, *Thomas*, *Rohrback*, and *Genins*, the court had to appoint an administrator for various reasons. *Langill*, 117 Wash. at 268 (intestate decedent); *Thomas*, 167 Wash. at 128 (invalid nonintervention will); *Rohrback*, 152 Or. App. at 70-71 (unclear why appointment was made, but probably based on intestacy);

Here, the record shows that David was in league with Russell during the administration of the estate. David believed that Russell was "doing an honest, competent, and thorough job in the closing of the estate." CP at 172. David testified that Russell had been "fair and equitable in the distribution of the estate" and that an accounting was unnecessary. 2 VRP at 245. David's statements exhibit his trust and comfort in Russell's methods of distributing the estate. CP at 172-73. This evidence, combined with Russell's multiple breaches of his fiduciary duty, supports the trial court's denial of David's appointment based on David's conflict of interest with the estate. Further, in light of the conflicting relationship between the brothers that David himself testified to, appointing any family member would result in further litigation and a delay in closing the estate. Therefore, we affirm James Woodard's appointment.[15]

## C. Attorney Fees

██ ██ The trial court awarded attorney fees to Peter and Jeffrey and ordered Russell Jones to pay the costs personally. CP at 107, Conclusion of Law 21. Under RCW 11.68.070, attorney fees may be awarded. Further, RCW 11.96A.150 allows costs in probate cases to any party, from any party, and is not limited by RCW 11.68.070. Combining these provisions, Peter and Jeffrey should be awarded all reasonable and necessary attorney fees, including those incurred on appeal. *See Allard v. Pac. Nat'l Bank*, 99 Wn.2d

*Genins*, 166 Ga. App. at 843 (seeking appointment of administration *de bonis non*). Although the case at bar involves a valid nonintervention will naming David as an alternative representative, the reasoning in the cited cases remains applicable to the case at bar. A personal representative must administer the estate in the best interest of the beneficiaries. If a representative has a conflict of interest, whether he be appointed or named in a nonintervention will, he will not be able to fulfill his fiduciary duties. Therefore, a conflict of interest may disqualify a person from acting as the personal representative. Unlike *State ex rel. Lauridsen v. Superior Court*, 179 Wash. 198, 206, 37 P.2d 209 (1934), here it has been shown that David has a disqualification based on his conflict of interest.

[15] Although court appointed administrators are the last choice under RCW 11.28.120, the parties only argue for the appointment of Russell Jones, David Jones, or James Woodard. Given these options, James Woodard is the best choice.

394, 407-08, 663 P.2d 104 (1983).[16] Further, Russell should personally pay these fees because the litigation was necessitated by his multiple breaches of fiduciary duty to Peter and Jeffrey. *Id.* We remand for a calculation of these fees and remind the trial court to substantiate its award with the appropriate findings of fact and conclusions of law. *See Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632, 966 P.2d 305 (1998).

## CONCLUSION

We reverse the Court of Appeals and affirm the trial court. The ethical standards for personal representatives remain the same, regardless of whether the representative performs his or her duties under court supervision. All personal representatives act in identical fiduciary capacities and must refrain from self-dealing, administer the estate solely in the interest of the beneficiaries, and uphold their duty of loyalty to the beneficiaries.

Therefore, we construe RCW 11.68.070 and 11.28.250 to hold all personal representatives to the same fiduciary duty. To achieve this end, we find that RCW 11.68.070 incorporates *all* of the grounds listed in RCW 11.28.250 into the nonintervention statutory scheme. Only by fully incorporating RCW 11.28.250 into RCW 11.68.070 can all beneficiaries be protected and the intent of the legislature fulfilled.

Based on this statutory construction, we find the trial court had jurisdiction to intervene and remove Russell Jones as a personal representative. As Judge Baker noted, Russell's behavior as a personal representative has been "appalling." 4 VRP at 703. Russell committed several egregious breaches of his fiduciary duty which are supported by the record and constitute valid and sufficient grounds for his removal. In light of David Jones's conflicts of interest

---

[16] *Allard* is a trust case, but still is applicable here since a personal representative has fiduciary duties similar to those of a trustee, as he is acting in a trust capacity.

with the estate, we affirm the appointment of James Woodard as a successor personal representative. We remand for a final accounting and award attorney fees to Peter and Jeffrey Jones, both to be paid personally by Russell Jones. After an accounting, the amount Russell Jones owes to the estate may be offset by Russell's one-fourth distributive share, and repairs, utilities, property taxes, and property insurance that Russell personally paid.

ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and FAIRHURST, JJ., concur.